UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIAM DEANS, | Case No. 2:16-cv-2405-APG-PAL |
| Plaintiff, | **PRELIMINARY INJUNCTION** |
| v. | (ECF No. 3) |
| LAS VEGAS CLARK COUNTY LIBRARY DISTRICT, et al., | |
| Defendants. | |

Plaintiff William Deans requests a preliminary injunction preserving his right to gather signatures on petitions outside the West Charleston Public Library in Las Vegas. He argues the First Amendment prohibits: 1) the library's "check in"/"registration" requirement for petitioners; 2) the small area to which petitioners are limited; and 3) the one-year Notice of Trespass issued to Deans for his failure to comply with these policies. The defendant Las Vegas-Clark County Library District responds that the policies are necessary to preserve unimpeded access to the library. Based on the evidence presented during the injunction hearing, these policies do not appear to be narrowly tailored to achieve the District's stated goal. Thus, Deans is entitled to preliminary injunctive relief, albeit not as great as he requests. The details of the temporarily permitted restrictions are laid out below.

**STATEMENT OF FACTS**[1]

Deans is a professional petitioner and voter registrant. He travels extensively nationwide conducting this activity. ECF No. 3 at 2. On October 13, 2016, Deans went to the plaza outside

---

[1] These facts were established by the briefs and evidence presented at the injunction hearing. They are not binding for purposes of trial.

the eastern entrance to the West Charleston Public Library in Las Vegas to circulate a petition and inform people how to register to vote. *Id.* at 2–3. The library is a branch of defendant Las Vegas-Clark County Library District and sits on property leased from the defendant College of Southern Nevada (CSN), whose campus is adjacent to the branch. ECF No. 11 at 2; ECF No. 12-4.

After Deans petitioned for several minutes, a library security officer told him that he had to "check in" or "register" inside before petitioning.[2] ECF No. 3 at 3. Assistant branch manager Sam Kushner also came outside and told Deans that petitioning was restricted to a small, designated area about 75 feet from the entrance. Deans refused to comply, stating that he had a First Amendment right to petition without either checking in or limiting himself to the designated area. *Id.* at 4. After several attempts to convince Deans to comply or to leave the property for the day, library staff summoned CSN police officers. When Deans still refused to leave, defendant CSN Officer Antonia Summerlin issued him a Notice of Trespass for "failure to comply with staff instruction," barring him from all Library District properties for one year. *Id.* at 4–5.

On October 21, after a hearing, I entered a temporary restraining order allowing Deans to conduct his petition activities in most of the plaza area. On November 1, I held an evidentiary hearing to determine whether a preliminary injunction should issue.

**ANALYSIS**

To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the

---

[2] The parties dispute whether Deans was told to "check in" or "register."

plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

I.   **Deans Is Entitled to a Preliminary Injunction.**

A. **Deans Has Established a Likelihood of Success on the Merits.**

i.   *The plaza is likely a public forum.*

"In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). "Public property which is not by tradition or designation a forum for public communication" receives less speech protection. *Id.* at 46. Consequently, the first issue is what type of forum the library plaza is. I consider three factors:

> 1) the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area; 2) the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area; and 3) traditional or historic use of both the property in question and other similar properties.

*Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100–01 (9th Cir. 2003). I consider these factors in light of two "underlying considerations": 1) "the compatibility of the uses of the forum with expressive activity," and 2) "speakers' reasonable expectations that their speech will be protected." *Id.* at 1099–1100 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) (inquiring "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time")).

Deans has established a likelihood that the plaza is a traditional public forum. The actual use and purposes of the plaza share some key features with a public sidewalk. The plaza indisputably offers free access to the public and it is mainly used by patrons walking between the library and its parking lots. Evidence was presented that the plaza is also sometimes used as a

thoroughfare. A sidewalk intersects the plaza near its eastern edge. ECF Nos. 11-6, 11-7. The sidewalk runs from West Charleston Boulevard to one of the library parking lots, roughly parallel to (but not adjacent to) the road leading to the CSN campus. Deans presented evidence at the hearing that pedestrians cut through the plaza on their way to and from the CSN campus.

As to physical characteristics, the plaza is an aesthetically attractive, circular outdoor space of about 75 feet in diameter. *Id.* Three partial spirals of large stone columns flank the library entrance on the west end of the plaza and help set the plaza apart from the parking lot. A bench sits on the east side. The plaza's ample physical space (around 5,000 square feet) both invites public discourse and mitigates concern that speech activity will necessarily interfere with library ingress and egress. The columns present minor access interference, especially near the library's doors.

Finally, as to traditional use of this property and similar properties, the District's employees testified that the plaza is infrequently used for expressive activity, with the exception of the limited petitioning and voter registration permitted by library policy. The District's employees also testified that only two public events have been held in the plaza in recent years, both conducted by the library. Deans testified that on one of the days he was present, he encountered two people conducting a survey in the plaza. And as to typical use of other similar properties, Deans testified that his ten years of full-time petitioning experience instructs him that libraries typically permit public speech in similar outside plazas.

Analyzing these factors in the light of the Ninth Circuit's two "underlying considerations" (compatibility of the use and the speaker's reasonable expectations), Deans's signature gathering is not incompatible with the normal activity of the plaza, even accepting the District's contention that the main purpose of the plaza is for library patrons to walk to and from the library entrance. Speakers arguably have a "reasonable expectation" they can speak in the plaza, particularly given

that the library abuts the CSN campus, which is a broad "free speech zone." ECF No. 10 at 4. Deans's testimony that most libraries allow expressive activity in similar outside plazas went unrebutted at the evidentiary hearing.

The only court to apply the Ninth Circuit's test to a similar library plaza concluded it was a traditional public forum. In *Prigmore v. City of Redding*, a California appellate court considered the Redding Public Library. The library offered "complete, unrestricted public access" to the outdoor area, which is "larger than the typical sidewalk and includes several benches and a newspaper rack. It is an area where people can rest or congregate for lengthy conversation." 211 Cal. App. 4th 1322, 1339 (2012). Beyond the area's physical compatibility with public speech, the court noted that libraries are public spaces. "Characterizing the area as a public forum is consistent with the role of a library as a mighty resource in the free marketplace of ideas. It is specially dedicated to broad dissemination of ideas. It is a forum for silent speech." *Id.* (internal citations omitted).

Deans has shown a likelihood of establishing that the plaza is a traditional public forum, especially absent evidence that treating the plaza as such will seriously undermine the normal activity of the library.

> ii. *The Library District's policy is likely not a reasonable "time, place and manner" regulation.*

With regard to a traditional public forum, the government may enact "[c]ontent neutral time, place and manner regulations," but only if they are "narrowly tailored to serve a significant government interest, and . . . leave open ample alternative avenues for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations omitted). Regulations that are content-based are permitted only if they are the "least restrictive means

available to further a compelling government interest." *Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009).

Deans argues that because the District's check-in and restricted area policies apply only to petitioners and voter registrants, they are content-based and thus subject to strict scrutiny. But library employee Sam Kushner testified that the library's policies apply to any signature-gathering effort, regardless of content or whether it is a political petition. For instance, the policies would apply to an individual gathering votes to select someone for a baseball all-star game. Further, the Ninth Circuit has suggested that a general restriction on petition-gathering is not content-based because it does not "regulate what can be said in an initiative or referendum petition, nor does it adopt or reject any particular subject that can be raised in a petition." *Prete v. Bradbury*, 438 F.3d 949, 968 n. 25 (9th Cir. 2006). Deans thus has not shown a likelihood of establishing that the library's policies are content-based restrictions. Rather, they appear more conduct-based. Consequently, I evaluate whether the District's policies and actions are reasonable time, place, and manner restrictions that are narrowly tailored to a significant interest of the District.

"[E]nsuring public safety and order" and "promoting the free flow of traffic on streets and sidewalks" are significant government interests. *McCullen v. Coakley*, 134 S. Ct. 2518, 2535 (2014); *see also Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994). But the government must "narrowly tailor[]" its protection of these interests. A regulation is not narrowly tailored if a "substantial portion of the burden on speech does not serve to advance its goals." *Ward*, 491 U.S. at 799–800. When Deans gathered signatures on October 13, library staff directed him to a small area between two stone pillars 75 feet from the library entrance. This restriction likely fails the narrow tailoring requirement because the District could make the area larger and extend it closer to the entrance with little impact on patrons' access to the library. The area between the far

pillars also likely fails the "ample alternatives" requirement, as it makes it difficult for petitioners to speak directly with passersby without shouting at them. *See McCullen,* 134 S. Ct. at 2535 (stating that a "buffer zone" restriction substantially burdened speech because the speaker was "often reduced to raising her voice at patients from outside the zone. . . ."). "In the context of petition campaigns, . . . one-on-one communication is the most effective, fundamental, and perhaps economical avenue of political discourse." *Id.* at 2536 (internal citations omitted).

The official District document describing the library branch's "petition signing zones" is filed with the Nevada Secretary of State (as required by the relevant state statute) and posted online. That document describes the permitted zone at the east entrance as "the far edge of the center circle." ECF No. 11-3. This most sensibly describes the edge of the innermost of the circles in the concrete that radiate from the center of the plaza, rather than the outermost circle where Deans was directed.[3] Thus, the library's attempt to limit Deans to the area between the far pillars is contrary to speakers' reasonable expectations created by the District itself.

In sum, Deans has shown a likelihood that the plaza is a traditional public forum and that the restrictions the library placed on him on October 13 were not narrowly tailored to serve the District's significant interest.

**B. Deans Has Established a Likelihood of Irreparable Harm.**

The Ninth Circuit and the Supreme Court have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

---

[3] It appears that the library does not even know the parameters of its own petitioning area. Assistant branch manager Kushner directed Deans to a small area at the far side of the outermost circle. At the hearing, branch manager Florence Jakus described a somewhat larger permitted area than was described by Kushner, which would allow a petitioner to stand a bit closer to the entrance. Ms. Jakus testified that this area was designated only after this lawsuit was filed, in preparation for the injunction hearing. Neither of these areas matches the area described in the District's official designation on the Nevada Secretary of State's website.

injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." *Klein*, 584 F.3d at 1208 (internal citations omitted). Deans therefore has shown a likelihood of irreparable harm.

### C. The Balance of Hardships Favors Deans.

The deprivation of First Amendment rights, in addition to being irreparable, is a grave harm denying a "most precious freedom[]." *Elrod*, 427 U.S. at 363. The District's significant interest in protecting ingress and egress will not be significantly burdened by the injunction I will impose because, as described in more detail below, the injunction leaves an ample buffer zone in front of the library doors. Thus, the balance of hardships strongly favors Deans.

### D. An Injunction Is in the Public Interest.

There is a "significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). "The public interest in maintaining a free exchange of ideas" is benefited by Deans's ability to fully exercise those rights. *Id.* The public's interest in unfettered access to the library will be protected by the injunction I will enter.

Deans has shown a likelihood of success on the merits, a likelihood of irreparable harm, the balance of hardships favors him, and an injunction is in the public interest. I therefore will grant preliminary injunctive relief.

## II.   Terms of the Injunction

Both Deans's right to freely petition and the District's interest in protecting patrons' access to the entrance can be temporarily satisfied by allowing Deans to conduct his activities in the area described in the District's officially filed "petition signing zones" document. Thus,

Deans may petition in any area of the plaza east of a line that is 1) parallel with the library doors and 2) intersects the plaza's center circle at the point furthest from the doors (see attached exhibit).  This area will ensure Deans has access to all pedestrians entering or crossing through the plaza because the sidewalk intersects the plaza in the allowed area.  At the same time, patrons will have at least 30 feet of unfettered access to the doors.

There is no present need to enjoin the library's check-in requirement because Deans testified at the hearing that the District has now relieved him of this obligation.  Finally, as I stated at the hearing, Deans may also enter and use the West Charleston library incidentally to his petitioning activities (e.g., to use the restroom or escape from the elements), so long as he does not violate otherwise applicable library rules.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Deans's Motion for Preliminary Injunction (ECF No. 3) is **GRANTED IN PART**, as described above.  This injunction is binding upon the Library District, CSN, their respective employees and agents, and all others identified in Federal Rule of Civil Procedure 65(d)(2).  No bond is required as security for this injunction.

DATED this 10th day of November, 2016 at 10:35 a.m.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE



Parking Lot