DENNIS L. KENNEDY
Nevada Bar No. 1462
KELLY B. STOUT
Nevada Bar No. 12105
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone:  702.562.8820
Facsimile:  702.562.8821
DKennedy@BaileyKennedy.com
KStout@BaileyKennedy.com

*Attorneys for Defendant*
LAS VEGAS-CLARK COUNTY LIBRARY
DISTRICT

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM DEANS, an individual , <br><br> Plaintiff , <br><br> vs. <br><br> LAS VEGAS CLARK COUNTY LIBRARY DISTRICT, <br><br> Defendant. | Case No.  2:16-cv-02405-APG-PAL |

**DEFENDANT'S RESPONSE TO PLAINTIFF WILLIAM DEANS'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff William Deans's [sic] Motion for Summary Judgment[1] (the "Motion") asks the

Court to grant summary judgment on all claims alleged in his Amended Complaint[2]--violation of the

Free Speech and Due Process clauses of the United States and Nevada Constitutions.  (FAC ¶¶ 43-

70.)  However, the Las Vegas-Clark County Library District's ("Library District" or "LVCCLD")

actions at issue all relate to provisions of its Petitioner & Voter Registration Guidelines (the

"Petitioner Guidelines"), which are expressly authorized by NRS 293.127565.  Thus, the Court

---

[1]     Pl. William Deans's Mot. for Summ. J., Oct. 10, 2017, ECF No. 51 [hereinafter MSJ].

[2]     Am. Verified 42 U.S.C. ¶ 1983 Compl. for Decl. Relief, Injunctive Relief, and Dmgs, Feb. 15, 2017, ECF No. 35 [hereinafter FAC].

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   cannot grant Mr. Deans' Motion without finding NRS 293.127565 unconstitutional; and this the

2   Court cannot do because Mr. Deans has not complied with Rule 5.1 of the Federal Rules of Civil

3   Procedure (each individually a "Rule" and collectively the "Rules"), which requires that the Nevada

4   Attorney General receive notice of any constitutional challenge to a Nevada statute and be given an

5   opportunity to intervene.  Rule 5.1 further provides that until the time to intervene expires, "the court

6   may reject the constitutional challenge, but may not enter a final judgment holding the statute

7   unconstitutional."  Fed. R. Civ. P. 5.1(c).  Although Mr. Deans' claims are not styled as a facial

8   challenge to NRS 293.127565, granting this Motion would essentially require the Court to find it

9   unconstitutional.  Consequently, the Court cannot grant the requested relief and Mr. Deans' Motion

10   must be denied.

11          However, ***even if*** Mr. Deans had met the procedural requirements of 5.1, the outcome would

12   be the same.  Mr. Deans cannot satisfy his burden of proof and summary judgment must be denied.

13          As a threshold matter, the Court must determine whether the West Charleston Library is a

14   public forum or a limited purpose public forum.  However, the relevant evidence supports only one

15   conclusion—the Library District intended to create a ***limited purpose*** public form.  This distinction

16   is significant because, "[i]n addition to time, place, and manner regulations, the state may reserve the

17   forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is

18   reasonable and not an effort to suppress expression merely because public officials oppose the

19   speaker's view."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

20          However, even if subject to the more rigorous standard applicable to a public forum, the

21   challenged provisions of the Library District's Petitioner Guidelines and Library Rules of Conduct

22   ("Rules of Conduct") are not unconstitutional.  First, Mr. Deans does not dispute that the Library

23   District has a significant interest in ensuring the safe, secure, and orderly administration of library

24   business.  Second, the limitations imposed by the disputed policies are narrowly tailored and directly

25   related to the Library District's ability to fulfill its mission and purpose.  Third, the restrictions leave

26   open ample, alternatives methods of communication.  Accordingly, the challenged provisions are

27   constitutionally permissible restrictions.

28          Finally, the policy provisions properly at issue are sufficiently definite and not void for

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

vagueness.  However, even if the challenged provisions are subject to ambiguity or vagueness, Mr. Deans' conduct was plainly prohibited.  Therefore, any complaints about vagueness are only relevant as applied to others, and third-party claims are not allowed.

## I.      STATEMENT OF RELEVANT FACTS

The following facts are either admitted or are not subject to reasonable dispute.

### A.      The Las Vegas-Clark County Library District

The Library District is a political subdivision authorized by statute and voluntarily created by a partnership between the City of Las Vegas and Clark County.  *See* NRS 379.0221; 379.142.  It has fourteen (14) urban branches and eleven (11) outlying branches.  (Ex. 1 at ¶ 5.[3])  It is required to "forever be and remain free and accessible to the public."  NRS 379.040.

The Library District's mission is to "[c]reate a sense of community by providing a welcoming, inviting, secure environment for our public and staff."  (Ex. 2.[4])  In particular, the Library District strives to be a safe place for children and allows children ages 10 years and older to use the facilities independently.  (Ex. 3.[5])  Accordingly, the Library District is committed to "[c]reat[ing] a sense of community by providing a welcoming, inviting, secure environment for our public and staff."  (Ex. 2.)

### B.      The West Charleston Library

One of the Library District's urban branches is located at 6301 West Charleston Boulevard, Las Vegas, Nevada (the "West Charleston Library").  (Ex. 1 at ¶ 6.)  The West Charleston Library is located on property leased from the College of Southern Nevada ("CSN").  (Ex. 4.[6])  It is located at the northeast corner of CSN's campus and faces away from CSN's facilities.  (*See* Ex. 1 at ¶ 6.b; Ex. 11.[7])  It is housed in a building that was purpose-built by the Library District and does not provide

---

[3]      Schember Decl., Nov. 30, 2017, attached as Ex. 1.

[4]      Mission Stmt., LVCCLD, Sept. 8, 2016, attached as Ex. 2.  All of the exhibits attached to his Motion were admitted into evidence during the November 2, 2016 Evidentiary hearing and are therefore admissible. " (Hr'g Tr. 208:4-6 (""I'll put on the record that while we were at recess all of the counsel for all parties agreed that all exhibits that had been designated, we stipulate that they be admitted.")

[5]      Library Rules of Conduct, LVCCLD, July 14, 2016, attached as Ex. 3.

[6]      Lease Agrmt. Between The Bd. of Regents of the Univ. of Nev. Sys. and the Las Vegas/Clark Cnty. Library Dist., Mar. 13, 1991, attached as Ex. 5.

[7]      Google Images of West Charleston Library, attached as Ex.11.

access to any other building.  (Ex. 1 at ¶ 6.c.)  The parking lot adjacent to the East Entrance of the West Charleston Library is part of the leased parcel (Ex. 4), and is intended for use only by library patrons, as which stated on a sign at the parking lot's entrance.  (Ex. 1 at ¶ 6.d.)  CSN does not have a right to possession or control over the property or the building; it is not part of the CSN Library System; and registration as a CSN student does not include borrowing privileges at the West Charleston Library.  (Ex. 4; Hr'g Tr. 228:15-18.[8])

The West Charleston Library has two public entrances—the main entrance on the east side (the "East Entrance") and one on the west side of the building ("West Entrance").  (Ex. 11.)  The East Entrance is a circular area, with tall cement sculptures arranged in concentric circles—an inner circle that is approximately 50 feet wide and an outer circle that is approximately 100 feet wide.  (Exs. 6 & 7[9]; Hr'g Tr. 253:5-10.)  It includes only minimal landscaping and is largely unadorned—containing only a single cement bench and a trashcan.  (Hr'g Tr. 208:17-25; Exs. 13-17.[10])

The East Entrance provides for ingress and egress, and the Library District has never allowed unfettered public use of the area.  (Hr'g Tr. 221:6 – 285:23 (discussing current and historical use of the East Entrance).)  In fact, the Library District rarely uses the East Entrance for purposes other than for ingress and egress.  (Id.)  Since the West Charleston Library opened in 1993, the Library District has used the East Entrance for special programming open to the public[11] on only a handful of occasions.  (Id.)

Specifically, the only recurring non-Library District uses of the East Entrance are as follows: (1) during elections, the Clark County Election Department displays signs outside of the East (and West) entrance; (2) groups who have rented space inside and allowed to place a sign (usually a sandwich board) at the East Entrance to direct people to the event, and (3) petition circulating and voter registration activities are permitted in designated areas, subject to the Petitioner Guidelines.

---

[8]      Tr. of Hr'g on Mot. for Prelim. Inj., Nov. 1, 2016, ECF No. 30 [hereinafter Hr'g Tr.].

[9]      Map of Pet'r Zone, attached as Ex 7.

[10]     Photo of East Entrance - Front, attached as Ex. 13; Photo of East Entrance – Side , attached as Ex. 14; Photo of East Entrance - Doors, attached as Ex. 15; Photo of East Entrance - Bench, attached as Ex. 16; Photo of East Entrance – Center Circle, attached as Ex. 17.

[11]     At times, the whole facility has been rented for private events, but such use is not relevant to this analysis because the building was not open to the public during those times.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   (*Id.*; MSJ, Ex. 6 at 16:18-24.[12])  The Library District does not allow solicitation, leafleting, or the

2   general posting of signs anywhere at the West Charleston Library without prior-approval.  (Ex. 3;

3   Hr'g Tr. 286:25 – 287:12.)

4        **C.    The Library Rules of Conduct**

5        In keeping with its purpose and Mission Statement, the Library District adopted and

6   implemented the Library Rules of Conduct to allow visitors to enjoy the library in a "pleasant and

7   safe environment" while "engag[ing] in normal activities associated with the use of public libraries."

8   (Ex. 3.)  There are only four rules.  (*Id.*)

9        The rule at issue in this case forbids "[c]onduct that endangers or disturbs library users or

10  staff in any way, or that hinders others from using the library or its resources."  (*Id.*)  By way of

11  example, the rule includes a list of 17 examples of prohibited behavior, which include "[r]estricting

12  access to entrances, exits, and/or library resources."  (*Id.*)  However, the examples do not constitute

13  an exhaustive list.  (Hr'g Tr. 271:17-272-7.)  Therefore, the rule includes a final prohibition on

14  "[f]ailure to comply with reasonable staff instruction."  (*Id.* at 272:8 – 273:9.)  It was added in 2016

15  as a "catch-all" because it was impossible to list every conceivable behavior that would violate the

16  rule.  (*Id.*)  Thus, it allows the Library District to respond to any behavior that "endangers or disturbs

17  library users or staff in any way, or that hinders others from using the library or its resources."  (*Id.*)

18       The Rules of Conduct do not prescribe specific penalties for violation of certain rules.  (Ex.

19  3.)  Rather, the policy warns visitors that "Failure to comply with the Library Rules of Conduct may

20  result in restriction of library privileges, immediate removal from the premises, or exclusion from

21  the library for a period of one day to one year, depending on the seriousness of the infraction."  (*Id.*)

22  Contrary to Mr. Deans' assertion, not all violations result in a one-year exclusion from Library

23  District property.  (MSJ at 21:19-20.)  Library Staff routinely issues verbal warnings, asks patrons to

24  leave the Library District facility temporarily pending a remedy of the infraction, or informs patrons

25  that they may not return for a period of time shorter than one year.  (Ex. 1 at ¶ 7.)

26  / / /

27  / / /

28

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[12]     Def.'s Resps. to Pl.'s First Set Of IROGS, Aug. 28, 2017, attached to Pl.'s MSJ as Ex. 6, ECF No. 51-7.

More serious infractions of the Rules of Conduct result in a Notice of Trespass, which prevents the offender from visiting any Library District branch facility.  (Ex. 12.[13])  At the time of Mr. Deans' visit, a Notice of Trespass was always effective for a one-year period.[14]  (Hr'g Tr. 291:23-24.)  However, a Notice of Trespass may be appealed.  The Notice of Trespass clearly states:

> If you wish to appeal this decision, you must do so by written request to the Library Director within fourteen (14) days of the above date:
>
> Executive Director
> 7060 W. Windmill Lane
> Las Vegas, NV 89113

(Ex. 8.)  Additionally, an appeal may be submitted by e-mail at administration@lvccld.org.  (Ex. 1 at ¶ 8.)  An appeal need not be in any particular format—a simple letter or statement will suffice.  (Ex. 6 at 11:11-19.)  Once received, the Executive Director reviews the appeal and then asks a staff member to investigate the facts and circumstances giving rise to the suspension.  (*Id.*)  The investigation includes a review of the written appeal (including any documentation provided) and any other relevant information, which may include any of the following:  speaking to staff, security, or other witnesses; reviewing all reports and other documentation; visiting the site; reviewing the patron's past history, including any previous incidents and/or appeals; and consulting with counsel. (MSJ, Ex. 6 at 12:14-26; Hr'g Tr. 292:7 – 22.)

After completing the investigation, the staff member who conducted the investigation makes a recommendation to the Executive Director.  (Hr'g Tr. 292:18-19.)  The recommended course of action may include lifting the suspension, reducing the length of the suspension, or continuing the suspension as originally issued.  (Ex. 6 at 12:25-26.)

**D.    The Petitioner Guidelines**

In accordance with NRS 293.127565, the Library District has designated areas for petitioners to gather signatures on petitions.  (Ex. 6.[15])  This information is available on the websites for the

---

[13]      Notc. of Trespass, LVCCLD (undated), attached as Ex. 8.

[14]      The Library District is currently in the process of creating guidelines to provide for shorter periods of trespass for some violations.  Bd. of Trustees Meeting Mins., LVCCLD, July 14, 2016, attached at Ex. 2 to Pl.'s Reply ISO Mot. for Prelim. Inj. as to Defs. Las Vegas Clark Cnty. Library Dist. and Ronald Heezen, ECF No. 13-2.

[15]      Desig. of  Public Areas for Gathering of Signatures on Petitions for the [LVCCLD] Pursuant to NRS 293.13756, attached as Ex. 6.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   Nevada Secretary of State[16] and the Clark County Clerk.[17]

2         At the West Charleston Branch, the Library District has identified two zones:  Zone 1 is "[a]t

3   the east entrance a[t] the far edge of the center circle" and Zone 2 is "[a]t the west entrance at the far

4   edge of the center circle." (Ex. 6; Ex. 7; Hr'g Tr. 252:17-19.)  The designated areas are

5   approximately 25-30 feet deep and wider than they are deep.  (*See* Ex. 7; Hr'g Tr. 253:5-10.)  The

6   Petitioner Zone in the East Entrance is directly adjacent to all three paths from which visitors would

7   approach the East Entrance.  (*See* Ex. 12.[18])  The Library District staff selected the location after

8   making a visual inspection of the entrance area.  (Hr'g Tr. 255:7-14.)  Based on years of experience

9   with petitioners and voter registration activities, the staff it selected a location that would not

10  interfere with visitor's entering or exiting the building.  (*Id.*at 255:9-11.)

11        In order to comply with the directive contained in NRS 293.127565, each Library District

12  branch was instructed to "designate an area for signatures to be gathered that is no less than 50 feet

13  from the main entrance and in such a manner that does not cause a safety concern." (MSJ, Ex. 5 at I-

14  29.[19])  The minimum distance of 50 feet was set to "[en]sure that people are able to enter and leave

15  the plaza area and feel comfortable without having petitioners or other people harass them or try to

16  stop them." (Hr'g Tr. 257:13-16.)

17        The Library District has also established Petitioner & Voter Registration Guidelines, which

18  include the following provisions:

19              Petitioners and voter registrars must ***check in*** with the Las Vegas-
20              Clark County Library District (LVCCLD) Person In Charge (PIC)
                prior to set up.

21              Petitioners and voter registrars must follow our Library Rules of
22              Conduct while on District property.
                . . . .

23              Petitioners and voter registrars must set up within the designated zone
24              that LVCCLD has filed with the Secretary of State's Office. . . .

25  [16]       Nevada Sec'y of State, Designation Of Public Areas For The Gathering Of Signatures On Petitions,
26  http://nvsos.gov/sos/elections/initiatives-referenda/petition-district-maps/designation-of-public-areas-for-the-gathering-
    of-signatures-on-petitions (last visited Nov. 28, 2017).
27  [17]       Clark Cnty. / Election / Services / Petitions, http://www.clarkcountynv.gov/election/services/Pages/Petitions.
    aspx (last visited Nov. 28, 2017).
    [18]       Google Earth Photo of West Charleston Library, attached as Ex. 12.
28  [19]       P[erson] I[n] C[harge] Manual, LVCCLD (undated), attached as Ex. 5 to Pl's MSJ.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

> Petitioners and voter registrars must remain within the designated petitioner zone.
>
> . . .
>
> Petitioners and voter registrars must not obstruct a library entrance or exit, nor should they impede vehicular or pedestrian traffic.

(Ex. 4 (emphasis added).)  The Petitioner Guidelines are necessary to "ensure the orderly and safe administration of library business."  (MSJ, Ex. 6 at 7:26-28.)  They are based on "the totality of [the Library District's] experiences since its creation in 1965."  (*Id.*)

Pursuant to NRS 293.127565(2), the Library District has also implemented a "check-in" procedure for individuals who wish to circulate a petition at a Library District facility.

> The "check-in" process requires only that the individual notify the PIC of the following:
>
> • That he or she is present for the purpose of gathering signatures on a petition; and
>
> • The dates and times that he or she intends to use the area designated for circulating petitions.
>
> After checking in, LIBRARY DISTRICT explains the procedures and shows the individual the designated petitioning location.  The individual is not required to provide his or her name (or any form of identification) or identify the subject matter of the petition.

(*Id.* at 3:24-4:5.)  In particular, the "check-in" procedure does not require Petitioners to submit any written information and the Library District does not keep any written records regarding Petitioners. (Hr'g Tr. 175:24-176:7.)

The check-in procedure makes the Library District staff aware of the person's presence, allows the Library District to know who is present on its grounds for a legitimate purpose, allows the staff member to show the person the designated areas, provides an opportunity to answer any questions the person may have regarding the Guidelines or Rules.  (Hr'g Tr. 143:18-21; Ex. 1 at ¶ 9.)

### E.   Mr. Deans Refuses to Follow Library District Rules

At approximately 2:15 p.m. on October 13, 2016, Mr. Deans was outside the east entrance to the West Charleston Branch collecting signatures on a petition.  (Hr'g Tr. 144:6-12.; Exs. 9-10.[20])

---

[20]   Incident Rpt., LVCCLD, Oct. 13, 2016, attached as Ex. 9.  Police Rpt., Oct. 13, 2016, attached as Ex. 10.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   By his own admission, he was standing approximately 16 feet from the doors.  (*Id.* at 28:6-9.)  The

2   Library District's Security Officer approached Mr. Deans and requested that he check in with the

3   person in charge before collecting signatures.  (*Id.* at 22:4-8.)  Mr. Deans refused.  (*Id.* at 144:8-12.)

4          The Security Officer then called the Assistant Branch Manager, Sam Kushner ("Mr.

5   Kushner"), who explained the check-in procedure and showed Mr. Deans the area designated for

6   collecting signatures.  (*Id.* at 144:21-24.)  Mr. Deans refused to stay in the Petitioner Zone and re-

7   positioned himself in front of the library doors, interfering with library visitors' ability to enter and

8   exit the building.  (*Id.* at 145:7-9.)

9          Because Mr. Deans refused to stay within the Petitioner Zone, Mr. Kushner explained that if

10   he did not stay within the designated area, he would have to leave for the remainder of the day.  (*Id.*

11   at 62:22-25; 145:16-21.)  Mr. Deans still refused.  (*Id.* at 145:22 – 146:4.)

12          After Mr. Deans had refused repeated requests by multiple Staff Members to stay within the

13   Petitioner Zone, Mr. Kushner called CSN Campus Police at approximately 2:45 p.m.  (*Id.* at 146:21 -

14   147:7; 197:2-6, 16-23.)  At the time the Library District staff had not decided to trespass Mr. Deans.

15   (*Id.* at 202:10-12.)  They hoped that "if the police came over and explained to Mr. Deans what

16   needed to be done, that maybe he would listen to them since he didn't seem to be listening to

17   multiple requests from staff."  (*Id.* at 202:6-9.)

18          Upon arrival, Branch Manager Florence Jakus ("Ms. Jakus") informed the officers that if Mr.

19   Deans would not comply with its rules or leave the premises voluntarily, the Library District would

20   like Mr. Deans trespassed from the property.  (*Id.* at 211:24 – 212:2; 218:23 – 219:2.)  After

21   speaking with the officers, Mr. Deans remained unwilling to comply with the Rules of Conduct and

22   Petitioner Guidelines.  (*Id.* at 211:24 – 212:2.)  Therefore, one of the officers read him the Notice of

23   Trespass ("Notice"), which includes instructions on how to appeal the Notice and decision.  (*Id.* at

24   212:14-15.)

25          Mr. Deans left the premises and has not appealed the Notice and decision.  (*Id.* at 80:20 -

26   81:25.)

27   / / /

28   / / /

Page **9** of **29**

# II.   LEGAL ANALYSIS

## A.   Mr. Deans Failed to Comply with Rule 5.1.

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, a party who seeks to challenge the constitutionality of a Nevada statute must file a notice of constitutional question and provide notice to the Nevada Attorney General.  Fed. R. CIV. P. 5.1.

> (a) A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
>
>     (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>
>     . . .
>
>     (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
>     (2) serve the notice and paper on . . . the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1.  This notice allows the Court to comply with 28 U.S.C. §2403 and "certify to the appropriate attorney general that a statute has been questioned."  Fed. R. Civ. P. 5.1(b).  Upon receiving notice of the challenge, the Attorney General has a period of not less than 60 days to intervene.  *Id.* at 5.1(c).  The Rule further provides that "before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional."  *Id.*

"In cases in which neither the parties nor the district court notifies the appropriate official of the constitutional challenge, any orders of the court must be stayed or vacated until the United States Attorney General or state attorney general has had an opportunity to intervene."  4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1154 (4th ed. 2013).  *See e.g.*, *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) (refusing to consider plaintiff's constitutional arguments due to failure to comply with Fed. R. Civ. P. 5.1(b).); *ZYZZX2 v. Dizon*, No. 2:13-CV-1307-JCM-PAL, 2016 WL 1181666, at *2 (D. Nev. Mar. 25, 2016) (noting that prior motion for summary judgment was denied without prejudice due to plaintiff's failure to comply with Fed. R. Civ. P. 5.1).

/ / /

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Here, each of Mr. Deans' four claims—violation of the free speech and due process clauses of the U.S. and Nevada Constitutions—at least, in part, "draws into s to the constitutionality of NRS 293.127565, which provides:

> (1)     At each building that is open to the general public and occupied by . . . a political subdivision of this State or an agency thereof . . . ***an area must be designated*** for the use of any person to gather signatures on a petition at any time that the building is open to the public. The area ***must be reasonable*** and may be inside or outside of the building.  Each public officer or employee in control of the operation of a building governed by this subsection shall:
>> (a) Designate the area at the building for the gathering of signatures.

NRS 293.127565(1) (emphasis added).  The statute further requires a "notice" or "check-in" procedure:

> Before a person may use an area designated pursuant to subsection 1, the person ***must notify*** the public officer or employee in control of the operation of the building governed by subsection 1 of the dates and times that the person intends to use the area to gather signatures on a petition.  The public officer or employee may not deny the person the use of the area.

NRS 293.127565(2) (emphasis added).

Specifically, Mr. Deans argues that "[t]he Petition Policy require[ing] petitioners to check in before they can petition on library grounds, and may only engage in such conduct in designated spots . . . still chills protected speech, and serves as a[n impermissible] prior restraint." (MSJ 14:19-20, 22.)

As these practices are expressly authorized and required by statute, Mr. Deans is challenging the constitutionality of NRS 293.127565.  Although Mr. Deans also brings claims arising out of the Library District's enforcement of its Rules of Conduct, these claims necessarily fail if the Library District's enforcement of the Petitioner Guidelines was permissible.  Thus, all claims necessarily turn on the constitutionality of NRS 293.127565 (i.e., if the enforcement was permissible, the Library District was within its rights to trespass Mr. Deans because he refused to comply with provisions contained in the Petitioner Guidelines.

Furthermore, Mr. Deans argues that the Library District's Petitioner Guidelines and Rules of Conduct are subject to strict scrutiny.  However, NRS 293.127565 provides only that the designated area "***must be reasonable.***"  In order to apply strict scrutiny, the Court would have to find the

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

standard set forth in NRS 293.127565 to be unconstitutional.  Thus, the constitutionality of the statute must be decided before any other findings can be made.

Accordingly, Mr. Deans' failure to comply with Rule 5.1 is fatal to his motion and it should be denied.  Alternatively, the Court may consider the Motion on the merits, but it must assume (1) that the Library District's check-in policy is constitutional; and (2) the Library District may designate a reasonable space for circulating petitions.  Under this alternative, Mr. Deans cannot prevail unless he can prove that the Library District acted unreasonably in its enforcement of the Petitioner Guidelines.

### B.   Standard of Review on Summary Judgment.

Rule 56(a) provides for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment shall not be granted if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

All justifiable inferences must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "When 'direct evidence' produced by the moving party conflicts with 'direct evidence' produced by the party opposing summary judgment, 'the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.'"  *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1277 (D. Nev. 2009) (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987)).

Furthermore, a non-moving party's sworn statement must be accepted as true if it is not contradicted by other sworn statements or testimony of that party.  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 980 (9th Cir. 2006) (citing *Leslie v. Grupo ICA*, 198 F.3d 1152, 1157-59 (9th Cir. 1999)).  Even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining, or clarifying prior testimony," and "minor inconsistencies that result

/ / /

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  from an honest discrepancy, mistake, or newly discovered evidence afford no basis for excluding an

2  opposition affidavit."  *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

3           Finally, on summary judgment, the Court must not engage in credibility determinations or

4  weigh conflicting evidence.  *Anderson*, 477 U.S. at 249.  "'[C]redibility determinations, the

5  weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

6  not those of a judge . . . ."  *Leslie*, 198 F.3d at 1157 (quoting *Anderson*, 477 U.S. at 255).

7  **C.     The West Charleston Library is a Limited Purpose Public Forum.**

8            "In evaluating restrictions on speech, different standards apply depending on the type of

9  forum involved."  *Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044, 1048 (9th Cir. 2003).

10  "The Supreme Court has divided public forums into three categories: 'traditional public forums,'

11  'designated public forums,' and 'limited public forums.'"  *Kaahumanu v. Hawaii*, 682 F.3d 789, 799

12  (9th Cir. 2012) (quoting *Christian Legal Soc. Ch. of the Univ. of Cal., Hastings Coll. of the Law v.*

13  *Martinez*, 561 U.S. 661, 678 (2010)).

14           "In places which by long tradition or by government fiat have been devoted to assembly and

15  debate, the rights of the state to limit expressive activity are sharply circumscribed."  *Perry Educ.*

16  *Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  The same standards apply when

17  public property has been designated or opened for use by the public as a place for expressive

18  activity.  *Id*.  A designated public forum is created when the government intends to make property

19  not traditionally open to assembly and debate "generally available" for "expressive use by the

20  general public or by a particular class of speakers."  *Arkansas Educ. Television Comm'n v. Forbes*,

21  523 U.S. 666, 677–78 (1998).  "The defining characteristic of a designated public forum is that it's

22  open to the same 'indiscriminate use,' . . . and 'almost unfettered access,' . . . that exist in a

23  traditional public forum."  *Seattle Mideast Awareness Campaign v. King Cnty.*, 781 F.3d 489, 496

24  (9th Cir. 2015).

25           Conversely, "[p]ublic property which is not by tradition or designation a forum for public

26  communication is governed by different standards."  *Id.* at 46.   "[A] limited public forum is a sub-

27  category of a designated public forum that "refer[s] to a type of nonpublic forum that the

28  government has intentionally opened to certain groups or to certain topics."  *Hopper v. City of*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001).  "The government does not create a public forum by inaction or by permitting limited discourse, but only by ***intentionally*** opening a nontraditional forum for public discourse."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) (emphasis added).

 "To determine whether the government has imbued its property with the essential attributes of a traditional public forum, [the Ninth Circuit focuses] on the government's intent."  *Seattle Mideast Awareness Campaign*, 781 F.3d at 496.  To gauge the government's intent, the Ninth Circuit looks to several factors:

(1)  The terms of any policy the government has adopted to govern access to the forum;

(2)  How any policy governing access to the forum has been implemented in practice; and

(3)  The nature of the government property at issue.

*Id.* at 196-97.  Accordingly, "[t]he mere physical characteristics of the property cannot dictate forum analysis."  *United States v. Kokinda*, 497 U.S. 720, 727 (1990).

Mr. Deans' reliance on *Prigmore v. City of Redding*, 150 Cal. Rptr. 3d 647 (Cal. Ct. App. 2012) is misplaced.  (MSJ 10:7 -22.)  In *Prigmore*, the restrictions at issue were alleged to violate the California Constitution's liberty of speech clause, which "is broader and more protective than the free speech clause of the First Amendment."  *Prigmore*, 150 Cal. Rptr. at 659.  California's public forum test differs from its federal counterpart by focusing primarily on "the similarity of the area at issue to areas that have traditionally been deemed public forums."  *Id.* at 661.  In fact, "the rigid public forum analysis" applied by the U.S. Supreme Court in *Kolinda* "is inconsistent with [the California] Supreme Court's interpretation of the liberty of speech clause of the California Constitution."  *Id.* at 663.  Consequently, the decision by the California Court of Appeals is not persuasive.

Federal courts, on the other hand, have repeatedly found that public libraries are limited purpose public forums because "[i]t is clear . . . that a public library, albeit the 'quintessential' locus for the exercise of the right to receive information and ideas, is sufficiently dissimilar to a public park, sidewalk or street that it cannot reasonably be deemed to constitute a traditional public forum."  *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1256 (3d Cir. 1992).  *See also*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 591 (6th Cir. 2003) ("For the

2   purposes of First Amendment analysis, the Library is a limited public forum."); *Armstrong v. D.C.*

3   *Pub. Library*, 154 F. Supp. 2d 67, 75 (D.D.C. 2001) ("The parties correctly assert that a public

4   library is a limited public forum for purposes of constitutional analysis."); *Sund v. City of Wichita*

5   *Falls, Tex.*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000) ("The Wichita Falls Public Library, like all

6   other public libraries, is a limited public forum for purposes of First Amendment analysis.);

7   *Mainstream Loudoun v. Bd. of Trustees of Loudoun Cnty. Library*, 24 F. Supp. 2d 552, 563 (E.D.

8   Va. 1998) (government intent, extent of use, and nature of the forum indicate that library is a limited

9   public fora).

10       In *Kreimer*, the court found that the government had intended to open the library to the

11   public for specific purposes.  It made its assessment based on the fact that the government was not

12   under an obligation to open the library, but did so by choice and the stated purpose of the rules in

13   question.  *Kreimer*, 958 F.3d at 1259.  Additionally, the library rules "make clear that the library is

14   open to the public only for specified purposes:  reading, studying, using library materials . . . [and]

15   has not opened its doors for the exercise of all First Amendment Activities."  *Id.* at 1260.

16       Finally, the court found that "[a] library is 'a place dedicated to quiet, to knowledge, and to

17   beauty.'  Its very purpose is to aid in the acquisition of knowledge through reading, writing, and

18   quiet contemplation.  Thus, the exercise of other oral and interactive First Amendment activities is

19   antithetical to the nature of the Library."  *Id.* at 1261 (quoting *Brown v. Louisiana*, 383 U.S. 131,

20   142 (1966)).  Consequently, the court held that the library was a "limited public forum . . . [and

21   therefore] is obligated only to permit the public to exercise rights that are consistent with the nature

22   of the Library and consistent with the government's intent in designating the Library as a public

23   forum.  Other activities need not be tolerated.  *Id.* at 1262.

24       Just as in *Kreimer*, the West Charleston Library is a limited purpose public forum.  The City

25   of Las Vegas and Clark County had no obligation to create the Library District.  NRS 379.0221

26   ("The trustees of a county library district in any county whose population is 700,000 or more and the

27   governing body of any city within that county ***may***, to establish and maintain a public library,

28   consolidate the city into the county library district.") (emphasis added).  The Library District strives

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  to "[c]reate a sense of community by providing a welcoming, inviting, secure environment for our

2  public and staff." (Ex. 3.)

3       In keeping with this purpose, the Library Rules of Conduct were designed to allow visitors to

4  enjoy the library in a "pleasant and safe environment" while "engag[ing] in normal activities

5  associated with the use of public libraries." (Ex. 4.) Therefore, the rules prohibit "[c]onduct that

6  endangers or disturbs library users or staff in any way, or that hinders others from using the library

7  or its resources." (*Id.*) In addition to restrictions on petitioners, it has prohibited "unauthorized

8  selling or solicitation" and other "unauthorized" uses of Library District facilities.

9       Furthermore, there is no dispute that the Library District's Rules of Conduct and Petitioner

10  Guidelines have been consistently implemented and enforced. Mr. Deans has not provided any

11  evidence that the Library District has acted arbitrarily or capriciously with respect to the rules at

12  issue. Moreover, other Rules of Conduct expressly limit First Amendment speech activity in the

13  East Entrance. (E.g., The Library District does not permit the posting fliers or signs.) Apart from

14  petitioning and voter registration activities,[21] the Library District does not rent or otherwise permit

15  the public to use the East Entrance for any purpose other than ingress and egress of the Library

16  District. These limited uses are not sufficient to transform the area into a public forum

17       The nature of the West Charleston Library, and the East Entrance in particular, further

18  support the conclusion that the Library District did not intend for the space to be a public forum.

19  The layout and architecture of the East Entrance is not indicative of a public forum. It is constructed

20  entirely of concrete with only a trashcan and a single concrete bench that seats no more than two or

21  three people. (Ex. 13-17.) It is not an environment that invites prolonged use or public gatherings.

22  Furthermore, the stone pillars create a visual and physical barrier between the entrance area and the

23  sidewalk and street that run in front of the West Charleston Library.

24  / / /

25

26

27  [21]     The fact that the Library District has allowed other areas to be used for First Amendment activity does not transform the East Entrance into a public forum. *See Kokinda*, 497 U.S. at 730 (the fact that "individuals or groups have been permitted to leaflet, speak, and picket on postal premises" does not transform the sidewalk into a public forum).

28  Thus, Petitioner Zone' argument regarding the Anime festival and policies related to rental of meeting rooms is irrelevant.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The sidewalk[22] extending from the East Entrance leads only to a parking area (which is also part of the property leased to the Library District) and was intended for use only by library patrons. (Ex. 1 at 6.d.) Although people may, occasionally, walk past the West Entrance while traveling between two other locations, this is not sufficient to transform it into a public forum. In *Kokinda*, the Supreme Court held that a postal sidewalk that was physically indistinguishable from public sidewalks, "was constructed solely to provide for the passage of individuals engaged in postal business" and "not to facilitate the daily commerce and life of the neighborhood or city." *Id.* at 727. *See also Greer v. Spock*, 424 U.S. 828, 837–38 (1976) (sidewalks on a military base were nonpublic); *McTernan v. City of York, Penn.*, 577 F.3d 521, 527-28 (3d Cir. 2009) (ramp that ran parallel to public sidewalk was not a pubic forum when it "is distinct from the sidewalk and serves a separate purpose").

Finally, the West Charleston Library is not transformed into a free speech zone simply because it leases the property from CSN. It is located at the edge of CSN's campus and faces away from CSN's facilities—it is not an integrated part of CSN's campus. The building houses only the West Charleston Library and does not provide access to any other building. Registration as a CSN student does not include borrowing privileges at the West Charleston Library. Moreover, CSN does not have a right to possession or control over the library property.

I it is clear that the Library District intended to grant only "selective access," by imposing speaker-based and subject-matter limitations. *Seattle Mideast Awareness Campaign*, 781 F.3d at 497. Thus, it has created a limited public forum and other activities need not be tolerated. Therefore, the Library District's restrictions are not subject to strict scrutiny. Instead, they are permissible so long as they are "reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Kokinda*, 497 U.S. at 730.

/ / /

---

[22]      Notably, "not all streets and sidewalks are traditional public fora." *Verlo v. Martinez*, 820 F.3d 1113, 1138 (10th Cir. 2016). *See also Powell v. Noble*, 798 F.3d 690, 699 (8th Cir. 2015) ("While public sidewalks have most often been treated as traditional public forums, [p]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will.") (citations and internal quotation marks omitted); *United States v. Marcavage*, 609 F.3d 264, 275 (3d Cir. 2010) ("not all public sidewalks constitute public fora for First Amendment purposes"); *Del Gallo v. Parent*, 557 F.3d 58, 70 (1st Cir. 2009) ("Not all sidewalks owned by the large variety of government bodies are alike and not all sidewalks are public fora.").

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**D.** **The Library District's Petitioner Guidelines and Rules of Conduct are Permissible Time, Place, and Manner Limitations**

In a limited public forum, content-based "restrictions that are viewpoint neutral and reasonable in light of the purpose served by the forum are permissible." *Hopper* at 1074–75. "The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). *See also DiLoreto*, 196 F.3d at 967 ("In a nonpublic forum opened for a limited purpose, restrictions on access 'can be based on subject matter . . . so long as the distinctions drawn are reasonable in light of the purpose served by the forum' and all the surrounding circumstances.") (quoting *Cornelius*, 473 U.S. at 806 (1985). Thus, "[i]n addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 45.

"The 'reasonableness' analysis focuses on whether the limitation is consistent with preserving the property for the purpose to which it is dedicated." *Id.* Although a restriction must be viewpoint neutral, it ***may*** discriminate based on content. *Rosenberger*, 515 U.S. at 830 (1995) ("content discrimination . . . may be permissible if it preserves the purposes of that limited forum"). Because the West Charleston Branch is not a public forum, a restriction on speech "need only be reasonable; it need not be the ***most*** reasonable or the ***only*** reasonable limitation." *Kokinda*, 497 U.S. at 730 (emphasis added).

However, even if the East Entrance were a public forum (which it is not), the restrictions would still pass constitutional muster. Mr. Deans maintains that that the Guidelines must be "narrowly tailored to serve a significant government interest; and (2) leave open ample alternatives for communication." (MSJ 16:15-17 (citing *Seattle Aff. of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 796 (9th Cir. 2008)).

/ / /

/ / /

**1.      Designation of the Petitioner Zone is a Permissible Limit on Speech**

Here, the Petitioner Guidelines are narrowly tailored to serve the Library District's significant interest in ensuring the orderly functioning of the library, patron safety, and public access.  Each of the restrictions is designed to further the Library District's mission of "providing a welcoming, inviting, secure environment."  (Ex. 4.)  Thus, they are designed to maintain order on the premises and prevent "[c]onduct that endangers or disturbs library users or staff in any way." (Ex. 3.)

Notably, Mr. Deans simply argues that the Library District's policies and rules are unconstitutional.  However, Mr. Deans refused to abide by rules and remain confined in the Petitioner Zone.  Instead, he insisted on his right to stand approximately 15 feet from the door while engaging in petitioning activities.  Unlike a plaintiff who is harmed by complying with an unconstitutional requirement, Mr. Deans has alleged that he suffered constitutional injury by the Library District's actions, which prevented him from petitioning within 15 feet of the entry doors.  Unless the Library District is required to allow petitioning activity that close to the door, then Mr. Deans has suffered no injury because the Library District was entitled to prohibit his actions.

Given the Library District's significant interest[23] in maintaining order and ensuring the safety of its patrons, it is reasonable to require that Petitioners stay within designated areas.  Petitioning, like the solicitation that was at issue in *Kokinda*, "impedes the normal flow of traffic" and "requires action by those who would respond." *Kokinda*, 497 U.S. at 734.  Thus, it is reasonable to require that the activity take place out of the main flow of foot traffic.  The Library District does not have to wait until a Petitioner creates a danger or disturbance to impose restrictions.  *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 751 (6th Cir. 2004) ("the government does not need to wait "until havoc is wreaked to restrict access to a nonpublic forum.") (quoting *Cornelius*, 473 U.S. at 810).  Likewise, it may restrict speech that would be disruptive to Library District business or for the purpose of avoiding controversy.  *Id.*

Significantly, Mr. Deans testified that "[t]he easiest time to get someone to sign is when someone else has signed. If you got five people signing at once people come up to you because they

BAILEY✧KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[23]       Plaintiff does not challenge this conclusion.  (MSJ 24 – 21:2.).

see this going on." (Hr'g Tr. 16:18-20.)  Therefore, the question is not whether Mr. Deans and a single individual could obstruct access to the doors, but whether Mr. Deans and five or more individuals standing 15 to 20 feet away from the door could reasonably be expected to impede pedestrian traffic.

Likewise, the Petitioner Guidelines necessarily contemplate the possibility of multiple persons or multiple groups petitioning simultaneously.  Obviously, multiple groups of petitioners occupying the area 15 feet from the door could completely block access.  By limiting petitioning activity to areas 50 feet from the door, the Library District has taken reasonable steps to ensure that it will not be required to prefer one petitioner over another for a preferential location.

Finally, the Petitioner Zone is a reasonable size and centrally located near all three access points to the East Entrance.  Contrary to Mr. Deans' representations, the location allows a Petitioner to speak with any visitor entering or exiting the building because the physical structure requires that all visitors enter and exit the East Entrance on the far east side of the area, where the Petitioner Zone is located.  Although Mr. Deans would prefer that he be given the freedom to approach each person and follow them as they walk away, the standard does not require that Mr. Deans be permitted unfettered access to the entire East Entrance.

It is plainly evident that the designation of the Mr. Deans satisfies even strict scrutiny because it is narrowly tailored to serve the Library District's significant interest in ensuring the orderly functioning of the library, patron safety, and public access.  Additionally, the designation of Mr. Deans allows for ample alternative channels of communication.  Therefore, the restrictions are permissible.

**2.**   **The Provision in the Rules of Conduct Relating to Staff Instructions Is Not A Time, Place, or Manner Restriction.**

Mr. Deans erroneously characterizes the provision in the Rules of Conduct relating to "failure to follow reasonable staff instructions" (and any penalty for violation) as being an unreasonable time, place, and manner restriction.  (MSJ 20:17-21:22.)  However, the language at issue is not, in itself, a rule.  Rather, it is an example of conduct that violates the rule prohibiting '[c]onduct that endangers or disturbs library users or staff in any way, or that hinders others from

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

using the library or its resources." (Ex. 3.)  In this case Mr. Deans was instructed to abide by the provision of the Petitioner Guidelines that states "[p]etitioners and voter registrars must remain with in the designated petitioner zone." (Ex. 4.)  Therefore, this provision is the one that is properly subject to First Amendment analysis.  As explained above, this is a permissible time, place, and manner restriction.  (*See infra* § III.D.)

Nonetheless, the Rules of Conduct are eminently reasonable and plainly serve an important government interest.  As expressly stated within the Rules of Conduct, their purpose is to prevent "behaviors and activities that interfere with the safe, secure, and respectful use of libraries." (Ex. 3.)  A rule prohibiting "[c]onduct that endangers or disturbs library users or staff" or that "hinders others from using the library or its resources" is closely related to that purpose and furthers the Library District's interest in ensuring the orderly administration of library functions.

Furthermore, Mr. Deans is wrong in his assertion that any violation of the Rules of Conduct result in a one-year exclusion from Library District property.  (MSJ at 21:19-20.)  In accord with the warning provided in the Rules of Conduct, the Library Staff routinely issues verbal warnings, asks patrons to leave the Library District facility temporarily pending a remedy of the infraction, or informs patrons that they may not return for a period of time shorter than one year. (Ex. 1 at ¶ 7.)

A Notice of Trespass is **not** automatically issued every time a patron violates the Rules of Conduct, but is reserved for situations involving repeated and/or serious infractions.  (*Id.*)

In fact, Mr. Deans was given a verbal instruction, issued a warning, and asked to leave before the decision was made to issue him a Notice of Trespass (Hr'g Tr. 62:22-25, 145:16-21, 145:22 – 146:4; 202:6-9, 10-12.)  He was only trespassed as a last resort because he chose to remain on the property but refused to comply with its rules.  (Hr'g Tr. 211:24 – 212:2; 218:23 – 219:2.)

Although exclusion from the Library District property necessarily restricts the person's ability to engage in protected speech on the property, Mr. Deans has failed to establish that a person may not be excluded from a location otherwise open to the public as a penalty for breaking the rules that govern conduct.

/ / /

/ / /

**E.     The Check In Requirement Pursuant to NRS 293.127565 Does Not Constitute an Impermissible Prior Restraint.**

The only portion of the Petitioner Guidelines at issue in this case which is a prior restraint on protected speech is the requirement that petitioners "check in" prior to beginning any petitioning activity.  (Ex. 4.)[24]  As discussed above, Mr. Deans' failure to comply with Rule 5.1 is dispositive on the issue of prior restraint because the Library District's check-in procedure is expressly authorized by NRS 293.127565(2) ("Before a person may use an area designated pursuant to subsection 1, the person must notify the public officer or employee in control of the operation of the building governed by subsection 1 of the dates and times that the person intends to use the area to gather signatures on a petition.").  (*See supra* § II.A.)  However, even if not authorized by statute, the Library District's check-in procedure is a permissible requirement.

The Ninth Circuit recognizes that the Supreme Court has "recently distinguished between schemes that 'authorize a licensor to pass judgment on the content of speech' and those whose purpose 'is not to exclude communication of a particular content, but to coordinate multiple uses of limited space' on a content-neutral basis.  A permit scheme that regulates competing uses of space on a content-neutral basis 'differs *toto coelo*' from a traditional censorship regime." *Seattle Aff. of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 797 (9th Cir. 2008) (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002)).  The latter type of restraint "'bear[s] a somewhat lighter burden,' including that it is not required to meet the extraordinary procedural requirements governing traditional prior restraints." *Id.* (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1036 (9th Cir. 2006)).

The Library District's check-in procedure is not designed to allow censorship based on content, but simply to ensure orderly and safe administration of Library operations.  Unlike the cases cited in Mr. Deans' Motion, the check-in process requires only that the petitioner notify the PIC that

_____

[24]     Petitioner Zone' attack on other provisions of the Petitioner Guidelines and the Rules of Conduct are not prior restraints and/or are not at issue in this case.  The majority are time, place, and or manner restrictions, which are discussed below.  Although Petitioner Zone argues that the provisions granting the PIC "final discretion" are unconstitutional prior restraints, neither involves a pre-condition that must be met before a person may engage in first amendment activity or discretion to allow the activity.  These provisions, like the Notice of Trespass, are not prior restraints, but involve penalties imposed *after* a violation of the Library District's rules occurs.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

he or she is on the property for the purpose of circulating a petition.  As explained above, the check-in procedure facilitates the orderly and safe operation of the Library District.  (Hr'g Tr. 143:18-21; Ex. 1 at ¶ 9.)  First, it allows the Library District to be aware of activities that are occurring on its premises and to take appropriate action if others engage in improper activities.  It also allows the Library District staff to respond promptly and knowledgeably if other patrons question a Petitioner's actions or right to be present.  Furthermore, it provides the Library District staff with an opportunity to explain the Guidelines to petitioners to ensure that any petitioning is orderly and non-disruptive. Accordingly, the Library District's Guidelines are reasonable.  *See e.g. Univ. & Cmt. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179 (2004) (analyzing "check-in" procedures pursuant to NRS 293.127565).  *See also Walker v. Oregon*, No. CIV. 08-06135-HO, 2010 WL 1224235 (D. Or. Mar. 23, 2010) (holding that Oregon statute requiring paid petition circulators to carry proof of registration, did not restrict speech so as to violate the First Amendment because "requiring paid circulators to provide identifying information to the state—information that is already available by public records request—does not so restrict speech as to violate the First Amendment")

Furthermore, Mr. Deans has made no effort to articulate why the Library District's check-in procedure constitutes an unreasonable prior restraint.  Unlike the cases cited in Mr. Deans' brief, this procedure does not require a petitioner to give advance notice, "does not affect signature gatherers' choices to remain anonymous to the general public[,] or appear to make them more susceptible to public harassment or retaliation."  *Nevadans for Sound Gov't*, 120 Nev. at 728, 100 P.3d at 191.  Accordingly, the check-in procedure is permissible.

## F.   The Rules of Conduct and Petitioner Guidelines are Not Void for Vagueness.

It is well-established that "a law fails to meet the requirements of the Due Process Clause if it is so vague and standard less that it leaves the public uncertain as to the conduct it prohibits."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality opinion) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966)).  Nevertheless, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  *See also Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015) ("Due process

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   'does not require 'impossible standards' of clarity.'") (quoting *Kolender v. Lawson*, 461 U.S. 352,

2   361 (1983).  "[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear

3   what the statute proscribes 'in the vast majority of its intended applications." *Pickup v. Brown*, 740

4   F.3d 1208, 1233 (9th Cir. 2014) (quoting Cal. Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141,

5   1151 (9th Cir. 2001)).

6        Furthermore, federal courts "consider whether a statute is vague as applied to the particular

7   facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot

8   complain of the vagueness of the law as applied to the conduct of others.'" *United States v. Szabo*,

9   760 F.3d 997, 1003 (9th Cir. 2014) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–

10  19 (2010)).

11       Mr. Deans argues that certain provisions in the Rules of Conduct and Petitioner Guidelines

12  are void for vagueness.  However, his argument fails as to both Library District policies because

13  each is sufficiently definite that Mr. Deans was aware that his actions were proscribed.

14           **1.    The Rules of Conduct**

15       In the Rules of Conduct, Mr. Deans challenges the language that refers to "[f]ailure to

16  comply with reasonable staff instruction."  (MSJ 25:1-24.)  Mr. Deans claims that "the language of

17  the policy does not provide any real prospective indication of what conduct is prohibited."  (*Id.* at

18  25:2-4.)  In particular, Mr. Deans alleges that it "lacks any objective standards that could potentially

19  curtail a staff member's selective or arbitrary enforcement of this restriction."  (*Id.* at 25:7-9.)

20  Neither is true.

21       As a preliminary matter, it is significant that the challenged provision is not a rule, but

22  merely an example of conduct that would violate the rule.  Thus, the language may not be tested in

23  isolation, but must be viewed within the context of the rule and overall policy.  *See United States v.*

24  *Zhi Yong Guo*, 634 F.3d 1119, 1122 (9th Cir. 2011) ("a statute does not fail the vagueness test

25  simply because it involves a complex regulatory scheme, or requires that several sources be read

26  together).

27       The rule at issue prohibits '[c]onduct that endangers or disturbs library users or staff in any

28  way, or that hinders others from using the library or its resources."  (Ex. 3.)  Under the rule is an

1   indented, bulleted list of 17 types of prohibited behavior." (*Id.*) The list is prefaced by the

2   clarification that the prohibited conduct "include[s], but is not limited to" the 17 examples. (*Id.*)

3   Therefore, it includes a final prohibition on "[f]ailure to comply with reasonable staff instruction."

4   (*Id.* at 272:8 – 273:9.) This was added in 2016 as a "catch-all" because it would be impossible to list

5   every possible behavior that would violate the rule. (*Id.*) The catch-all allows the Library District to

6   respond to any behavior that "endangers or disturbs library users or staff in any way, or that hinders

7   others from using the library or its resources." (*Id.*)

8   It is clear from the rule's wording and formatting that these examples, including the "[f]ailure

9   to comply with reasonable staff instruction," all relate back to the rule. Accordingly, staff

10   instructions that fall within the rule are limited to those that attempt to curtail behavior that is

11   dangerous, disruptive behavior, or hinders others from using the library or its resources. (*See* Ex. 3.)

12   In addition to being similarly flawed, Mr. Deans' second argument--that the provision "lacks

13   any objective standards (*Id.* at 25:7-9)—is simply absurd. Reasonableness is an objective standard

14   that —by definition—excludes selective or arbitrary actions. *See e,g. Graham v. Connor*, 490 U.S.

15   386, 388 (U.S. 1989) (discussing "the Fourth Amendment's 'objective reasonableness' standard "*);*

16   *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (distinguishing

17   between objective reasonableness standard and subjective good faith under the MPAA*); Zaldivar v.*

18   *City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) (articulating the objective reasonableness

19   standard applicable to Rule 11), *abrogated on other grounds*, *Cooter & Gell v. Hartmarx Corp.*, 496

20   U.S. 384, 399-400 (1990). The sheer number of federal rules and statutes that impose a

21   "reasonableness" requirement belie this assertion.

22   ### 2.   The Petitioner Guidelines

23   In the Petitioner Guidelines, Mr. Deans challenges the provisions that relate to the Petitioner

24   Zone:

25   
26   Petioners and voter registrars must set up within the designated zone
    that LVCCLD has filed with the Secretary of State's Office.

27   Petitioners and voter registrars must remain within the designated
    petitioner zone.

28   (Ex. 4.)

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

First, Mr. Deans argues that the provision is "unconstitutionally vague simply by virtue of the fact that very few people are likely to discover a designated "petition spot" ahead of time." (MSJ 23:10-11.)  This argument should give the court no pause because it is well established that "[t]he principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971).

Next, Mr. Deans argues that the definition of the Petitioner Zone "does not clearly indicate where the petitioning spot is actually located, or at least the one at the east entrance of the Library." (MSJ 23:20-22.)  This argument is also easily dispensed with because the Court need not determine the precise location of the Petitioner Zone because the description is sufficiently definite to allow Mr. Deans to know that he was outside of the Petitioner Zone.  *United States v. Szabo*, 760 F.3d 997, 1003 (9th Cir. 2014) ("We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'") (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010).

The Petitioner Zone at the East Entrance is located "[a]t the east entrance [at] the far edge[ ] of the center circle." (Ex. 6.)  Dean argues that the description is ambiguous.

> Given this layout, there are many reasonable interpretations of where the "far edge of the inner circle" is.  It could be the space in the inner bullseye directly opposite the entryway doors . . . It could be the space in the second circle directly opposite the entryway doors.  Of course, since the area is a circle, the "far edge" could also reasonably be interpreted as the circle's circumference.

(MSJ 24:4-8.).  Assuming, *arguendo*, that Petitioner Zone' contention is true, none of these interpretations would have placed the Petitioner Zone where Mr. Deans admits he was standing and from which he refused to move —approximately 16 feet from the doors.  (Hr'g Tr. 28:6-9.)  The East entrance is a circular area approximately 100 feet in diameter.  Therefore, the "far edge" of the concentric circles Mr. Deans alleges would place the Petitioner Zone at least 50 feet from the doors.[25]  Consequently, Mr. Deans' conduct is "conduct that is clearly proscribed" and the Court

---

[25]    Moreover, Deans was both told and shown where the Petitioner Zone was located, and therefore cannot claim that he reasonably believed he was located within it.  (Hr'g Tr. 144:21-24; 146:21 - 147:7; 197:2-6, 16-23; Exs. 9-10.)

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    need not determine if the description would be vague under any other set of facts.

2         Nonetheless, the description of the Petitioner Zone is not vague.  The East Entrance is a

3    circular area with concrete pillars placed around most of the perimeter.  (Ex. 7.)  There are additional

4    pillars that create a smaller, center circle.  (*Id.*)  As illustrated on a diagram of the East Entrance, the

5    Mr. Deans covers the area from the far edge of the smaller circle to the parking lot.  (*Id.*)  This is

6    consistent with the Library District's description and statements during the November 2, 2016

7    evidentiary hearing.

8         To the extent that there is any ambiguity, "vagueness concerns diminish when the regulated

9    person has 'the ability to clarify the meaning of the regulation . . . by resort to an administrative

10   process." *Lee v. Enter. Leasing Co.-W.,* LLC, 30 F. Supp. 3d 1002, 1017 (D. Nev. 2014) (quoting

11   *Carrigan v. Comm'n on Ethics of State*, 129 Nev. Adv. Op. 95, 313 P.3d 880, 886 (2013)).  NRS

12   293.127565 contains an expedited, administrative means of appealing the Library District's

13   designation of the Petitioner Zone:

> Not later than 3 working days after the date of the decision that
> aggrieved the person, a person aggrieved by a decision made by a
> public officer or employee pursuant to subsection 1 or 2 may appeal
> the decision to the Secretary of State.  The Secretary of State shall
> review the decision to determine whether the public officer or
> employee violated subsection 1 or 2.  If the Secretary of State
> determines a public officer or employee violated subsection 1 or 2
> and that a person was denied the use of a public building for the
> purpose of gathering signatures on a petition, the Secretary of State
> shall order that the deadline for filing the petition provided pursuant
> to NRS 293.128, 293.172, 293.200, 295.056, 298.109, 306.035 or
> 306.110 must be extended for a period equal to the time that the
> person was denied the use of a public building for the purpose of
> gathering signatures on a petition, but in no event may the deadline
> be extended for a period of more than 5 days.

22   NRS 293.127565(3).  The availability of administrative guidance should overcome any concerns

23   about ambiguity in the description.

## III.   CONCLUSION

25        As stated above, the Court should deny Mr. Deans' Motion for failure to comply with Rule

26   5.1.  However, if the Court chooses to decide the Motion on the merits, the same outcome is

27   inevitable.  As provided in Rule 5.1, the Court must assume the validity of NRS 293.127565 and the

28   Library District's designation of the Mr. Deans and check-in requirement are both in compliance

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   with the statute's directives and are permissible limitations on petitioning activities.  Accordingly,

2   the Library District was justified in (1) its expectation that Mr. Deans compliance with the Rules of

3   Conduct and the Petitioner Guidelines and (2) to trespass Mr. Deans because he refused to comply

4   with the policies and would not leave the property—even after the police asked him to leave.  For

5   these reasons, Mr. Deans' Motion must be denied.

6         DATED this 30th day of November 2017.

7                                                         BAILEY❖KENNEDY

8

9                                                         By:  */s/ Kelly B. Stout*
10                                                         DENNIS L. KENNEDY
                                                          KELLY B. STOUT

11                                                        *Attorneys for Defendant*
12                                                        LAS VEGAS-CLARK COUNTY
                                                          LIBRARY DISTRICT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY❖KENNEDY and that on the 30th day of November, 2017, service of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF WILLIAM DEANS'S MOTION FOR SUMMARY JUDGMENT** was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

MARC J. RANDAZZA
ALEX J. SHEPARD
D. GILL SPERLEIN
**RANDAZZA LEGAL GROUP, PLLC**
4035 South El Capitan Way
Las Vegas, Nevada 89147

Email:  mjr@randazza.com
ajs@randazza.com
ecf@randazza.com
dgs@randazza.com

*Attorneys for Plaintiff*
WILLIAM MR. DEANS

_/s/  Kelly B. Stout, Esq._
Employee of BAILEY❖KENNEDY

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820