# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

WILLIAM DEANS,

        Plaintiff,

    v.

LAS VEGAS CLARK COUNTY LIBRARY DISTRICT, et al.,

        Defendants.

Case No. 2:16-cv-02405-APG-PAL

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

(ECF No. 51)

    This dispute arises from plaintiff William Deans' attempt to gather signatures for a petition outside the West Charleston Public Library before the November 2016 election. Staff at the library, pursuant to policies put in place by defendant Las Vegas Clark County Library District (the District), instructed Deans to check in and limit his activities to a particular spot. He refused, and was subsequently banned from all libraries in the district for a year.

    Deans sued, claiming the District's policies were unconstitutional, and now moves for summary judgment. Deans contends the library's entrance plaza in which he was gathering signatures is a traditional public forum, and the restrictions enforced by the District are unconstitutional time, place, and manner restrictions. He also argues that some of the restrictions are unconstitutionally vague. The District responds that the plaza is a limited public forum, that all the restrictions are reasonable in light of its interests in keeping library patrons safe and maintaining an accessible library, and that the restrictions are not vague.

    I grant Deans' motion for summary judgment in part. The plaza is a traditional public forum and the District's petitioner policy substantially burdens more speech than necessary. Similarly, the District's year-long, all-libraries trespass policy, as applied to Deans, is not narrowly tailored to protect the District's interests. Thus, the library's designated petitioning zone and check-in policy, and the District's trespass policy as applied to Deans are unconstitutional under the First Amendment. But Deans has not shown that he has standing to

assert his Fourteenth Amendment "void for vagueness" challenge to the petitioning zone.  And he has not shown that the District's policy of banning him from libraries for failing to follow staff instructions is unconstitutionally vague.  I thus deny those two portions of his motion for summary judgment.  To the extent that any of Deans' challenges were facial challenges, the motion is also denied.

## I.      __BACKGROUND__

The District created "Petitioner and Voter Registration Guidelines" (Petitioner Guidelines) pursuant to Nevada Revised Statutes § 293.127565.[1]  ECF No. 56-5.  According to the Petitioner Guidelines, "[p]etitioners and voter registrars must check in with the Las Vegas-Clark County Library District . . . Person in Charge (PIC) prior to set up."  *Id.*  They must "set up within the designated zone that [the District] has filed with the Secretary of State's Office" and "must remain within the designated petitioner zone."  *Id.*  The West Charleston Library designated two such zones, one at the east entrance, which it states is "[a]t the east entrance a (sic) the far edget (sic) of the center circle."  ECF No. 56-7.

The District also has a document titled "Library Rules of Conduct."  ECF No. 56-4.  The Rules of Conduct state that, in addition to adhering to all applicable laws, "visitors shall engage in normal activities associated with the use of public libraries."  *Id.*  The policy primarily lists "prohibited behaviors and activities that interfere with the safe, secure, and respectful use of libraries."  *Id.*  The first prohibited behavior or activity is "[c]onduct that endangers or disturbs library users or staff in any way, or that hinders others from using the library or its resources."  *Id.*  Under that heading is a non-exhaustive list of eighteen different categories of prohibited activities.  *Id.*  The eighteenth is "[f]ailure to comply with reasonable staff instruction."  *Id.*  At the end of the one-page document is the following statement: "Failure to comply with the Library Rules of Conduct may result in restriction of library privileges, immediate removal from the premises, or exclusion from the library for a period of one day to one year, depending on the seriousness of the infraction."  *Id.* (emphasis removed).

---

[1] This statute, discussed in more depth below, expands individuals' right to use public buildings to collect petition signatures.

On the afternoon of October 13, 2016, Deans was outside the east entrance of the West Charleston Public Library. ECF Nos. 3-1 at 2–3; 56-10 at 2.  The library is located on property leased from the College of Southern Nevada (CSN). ECF No. 56-6.  It has two public entrances, a main entrance on the east side and another on the west side of the building. ECF No. 56-12.  The east entrance plaza is a circular outdoor space about 75 feet in diameter. ECF Nos. 11-6; 11-7.  There are concentric circles in the pavement rippling out from a center circle. ECF No. 11-8.  Three partial spirals of large stone columns surround the plaza, and a bench sits on its southeast side. ECF Nos. 56-13; 56-17.

Deans was collecting signatures for a petition to put an automatic voter registration initiative on the ballot in Nevada and instructing individuals on how to register to vote. ECF No. 3-1 at 2–3.  After about 15 minutes, a library security officer approached Deans and told him he needed to check in or register with the library. ECF No. 30 at 22–23.  Deans refused, and was then approached by the library's assistant manager, Sam Kushner, who again told Deans he needed to check in and pointed him to an area designated by the library for petitioners. *Id.* at 144–45.  Kushner told Deans that if he did not go to the designated zone, he would be asked to leave for the day. *Id.* at 145.  The area Kushner pointed out was opposite the circular plaza from the library doors, approximately 65 to 70 feet from the entrance, between two stone columns in the outermost spiral, directly in front of the handicap ramp from the library's parking lot. ECF Nos. 3-2 at 2; 11-7; 30 at 154, 172–73, 225.

Deans refused Kushner's direction to remain in the designated zone, as well as instruction to do so from other library staff, including branch manager Florence Jakus. ECF Nos. 3-1 at 4; 30 at 26–27.  Kushner called the CSN police. ECF No. 30 at 162.  Jakus asked the police to trespass Deans from library property because he was not complying with the library's petition policy and refused to leave for the day when asked. *Id.* at 211–12, 218.  Jakus provided a Notice of Trespass to the officers, which had been filled out by Kushner. ECF Nos. 30 at 212, 222; 56-9.  The Notice stated that Deans was trespassed from the District for "Failure to comply with staff instruction." ECF No. 56-9.  It further stated that Deans was prohibited from visiting any library branch in the

1  District for one year, but that he could appeal the decision. *Id.* After receiving this notice, Deans

2  left the library. ECF No. 3-1 at 5.

3        On October 15, 2016, Deans filed his original complaint in this case and moved for a

4  temporary restraining order, which I granted in part. ECF Nos. 1; 7. I held an evidentiary hearing

5  and granted preliminary injunctive relief, allowing Deans to petition in an area I demarcated

6  different than the area identified by library staff. ECF Nos. 21; 25 at 8–10.

7      **II.**     **<u>ANALYSIS</u>**

8        Summary judgment is appropriate if the pleadings, discovery responses, and affidavits

9  demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to

10  judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the

11  outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

12  (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict

13  for the nonmoving party." *Id.*

14        The party seeking summary judgment bears the initial burden of informing the court of the

15  basis for its motion and identifying those portions of the record that demonstrate the absence of a

16  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden

17  then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine

18  issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

19  2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-

20  moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

21      **A. First Amendment**

22        Deans primarily challenges the District's policies and actions under the First Amendment

23  of the United States Constitution and under Article 1, section 9 of the Nevada Constitution. The

24  Supreme Court of Nevada has held that this section of the Nevada Constitution "protects the

25  general right of the people to engage in expressive activities" but "affords no greater protection to

26  speech activity than does the First Amendment to the United States Constitution." *Univ. and

27  Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004) (per

28

curiam).[2]  Deans argues that the West Charleston Library's east entrance plaza is a traditional public forum or designated public forum, and that the check-in policy and designated petitioner zone are impermissible time, place, and manner restrictions.  He also argues that the District's Rule of Conduct requiring compliance with reasonable staff instruction and the punishment of a one-year ban from all libraries in the District for a trespass are impermissible restrictions.

The District argues that the check-in policy and designated zone are required by Nevada Revised Statutes § 293.127565.  Therefore, Deans is challenging the constitutionality of that statute, and he failed to comply with Federal Rule of Civil Procedure 5.1, which requires notifying the state attorney general.  Alternatively, the District contends that the plaza is a limited purpose public forum, and the various policies and restrictions are reasonable in light of the purpose of the library and its entrance.

### 1.  Forum Analysis

To determine the proper First Amendment analysis for the plaza and whether Rule 5.1 applies, I must as an initial matter analyze the plaza under the Supreme Court's forum analysis framework "for evaluating First Amendment claims relating to speech on government property." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46 (1983)).  Under this framework, I determine whether the property is a traditional public forum, a designated public forum, a limited public forum, or a nonpublic forum "to ascertain what level of scrutiny to apply to restrictions on speech." *Id.* at 1098.  Then, I "apply the indicated standard of scrutiny to decide whether the restrictions in question pass constitutional muster." *Id.*

"The ability to restrict speech in public forums, whether traditional public forums or designated public forums, is sharply circumscribed." *Id.* (quotation omitted).  The government may "enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative

---

[2] I therefore do not analyze Deans' claims separately under the Nevada Constitution.

channels of communication." *Perry Educ. Ass'n*, 460 U.S. at 45.[3]  If the forum is limited or nonpublic, the government "may impose restrictions on speech that are reasonable and viewpoint neutral." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009).

First, it is imperative to define the scope of the forum at issue. *See Cornelius v. NAACP Legal Def. Fund & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985) ("[F]orum analysis is not completed merely by identifying the government property at issue.  Rather, in defining the forum we have focused on the access sought by the speaker. . . .  In cases in which limited access is sought, our cases have taken a more tailored approach to ascertaining the perimeters of a forum within the confines of the government property.").  Deans does not seek access to the interior of the library to collect signatures for his petition.  Instead, he seeks access only to the east entrance plaza.  Therefore, the plaza, rather than the library itself, is the forum at issue.

"The quintessential traditional public forums are sidewalks, streets, and parks." *Am. Civil Liberties Union of Nev.*, 333 F.3d at 1099.  Such places have "immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939).  In examining Deans' claim that the plaza is a traditional public forum, I consider three factors:

> 1) the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area; 2) the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area; and 3) traditional or historic use of both the property in question and other similar properties.

*Am. Civil Liberties Union of Nev.*, 333 F.3d at 1100–01 (citations omitted).  I consider these factors in light of two underlying considerations: "the compatibility of the uses of the forum with expressive activity" and "guarding speakers' reasonable expectations that their speech will be protected." *Id.* at 1100.  When I considered these factors at the preliminary injunction stage, I found that Deans established a likelihood that the plaza was a traditional public forum, "especially

---

[3] Although Deans alleged in his complaint that the District's restrictions on petitioners were content-based, he does not move for summary judgment on that basis.

absent evidence that treating the plaza as such will seriously undermine the normal activity of the library." ECF No. 25 at 5.

i.      *Actual Use and Purpose*

The plaza's actual use and purpose share key features with a public sidewalk, a "quintessential" traditional public forum.  The plaza is freely accessible to the public. *See* ECF No. 30 at 183.  As will be discussed further below, the library sits on the northeastern corner of the CSN campus, and the plaza is bisected by a sidewalk that is the most direct walking route from the road to the campus. *See* ECF No. 56-12.  Deans testified that pedestrians cut through the plaza on their way to and from the CSN campus. ECF No. 30 at 13–15.  Jakus also testified that people may walk through the plaza to get to campus, and that she has seen people walking through the parking lot and sidewalk. *Id.* at 226–27. *Cf. United States v. Kokinda*, 497 U.S. 720, 727 (1990) (noting a postal sidewalk "was constructed solely to provide for the passage of individuals engaged in postal business" and was not a thoroughfare because it led "only from the parking area to the front door of the post office").

The most common uses of the plaza are ingress to and egress from the library. *Id.* at 184, 209, 281.  People also use the area to smoke, make phone calls, or converse. *Id.* at 184, 209, 229. Jakus testified that people do not often sit and congregate in the plaza for extended periods of time. *Id.* at 209, 229.  The plaza's purpose cannot be limited to ingress and egress or it would not have been constructed with such an expansive, decorative space.  Based on the limited evidence provided by the parties, this factor does not weigh heavily on either side of the determination.

ii.      *Physical Characteristics*

I previously described the physical characteristics of the plaza in my order granting a preliminary injunction:

> [T]he plaza is an aesthetically attractive, circular outdoor space of about 75 feet in diameter.  Three partial spirals of large stone columns flank the library entrance . . . and help set the plaza apart from the parking lot.  A bench sits on the east side.  The plaza's ample physical space (around 5,000 square feet) both invites public discourse and mitigates concern that speech activity will necessarily interfere with library ingress and egress.  The columns present minor access interference, especially near the library's doors.

1    ECF No. 25 at 4 (citation omitted).

2         The library itself is located on the northeast corner of the CSN campus, at the corner of

3    West Charleston Boulevard and Community College Drive. ECF No. 56-12.  A public sidewalk

4    runs along West Charleston Boulevard and around to Community College Drive in front of the

5    library.  This sidewalk splits in front of the library, cutting in towards the library and continuing

6    in front of it, through the plaza, and dead-ending in one of the library's parking lots.  It also

7    continues along Community College Drive after a break for the driveway to the library parking

8    lot.  The parking lot abuts the sidewalk and plaza in front of the library.  Thus, while the plaza is

9    slightly isolated from the surrounding buildings, the sidewalk running through it is a continuation

10   of the roadside sidewalk and comprises the most direct route from the street corner to the CSN

11   campus. *Cf. Monterey Cty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1197

12   (9th Cir. 1987) ("The isolated nature of the building and the surrounding walkway indicate to all

13   who approach that the walkway services postal patrons entering the building and that it is not a

14   thoroughfare for passersby intent on other errands."); *Kanelos v. Cty. of Mohave*, 893 F. Supp. 2d

15   1001, 1013–14 (D. Ariz. 2012) (finding the physical characteristics of an entrance plaza to a local

16   government building that was "not centrally located or integrated into any surrounding public

17   locale" and had a sidewalk that "leads [only] from the parking lot to the building's entrance"

18   weighed against finding the plaza was a traditional public forum).

19        In *United States v. Grace*, the United States Supreme Court found that the sidewalks

20   bounding the Supreme Court's property are a traditional public forum. 461 U.S. 171 (1983).  The

21   Court highlighted the fact that there is "no separation, no fence, and no indication whatsoever to

22   persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court

23   grounds that they have entered some special type of enclave." *Id.* at 180.  In contrast, the D.C.

24   Circuit recently held that the Supreme Court plaza is not a traditional public forum. *Hodge v.*

25   *Talkin*, 799 F.3d 1145 (D.C. Cir. 2015), *cert. denied* 136 S. Ct. 2009 (2016).  The court

26   distinguished the plaza from the sidewalk, noting the plaza "is elevated from the sidewalk by a set

27   of marble steps" and a "low, patterned marble wall—the same type of wall that encircles the rest

28

of the building—surrounds the plaza platform and defines its boundaries." *Id.* at 1158. Moreover, the plaza and steps "are composed of white marble that contrasts sharply with the concrete sidewalk in front of it, but that matches the staircase ascending to the Court's front doors and the façade of the building itself." *Id.* The court found that the plaza's features convey to people that they have entered a "special type of enclave," essentially the "elevated front porch of the Supreme Court building." *Id.* at 1159.

The library entrance plaza here seems to be a combination of the sidewalks and the plaza in front of the Supreme Court. The library plaza is distinguished from the sidewalk by the spiral stone columns and wide space, but there is no separation from the public sidewalk or other indication that people have entered a "special enclave." The plaza's concrete, rather than sharply contrasting with the public sidewalk, instead matches that sidewalk. The features of the plaza distinguish it from a typical sidewalk, but it is also integrated into the public sidewalk, in contrast to the Supreme Court's "elevated front porch." *See also Am. Civil Liberties Union of Nev.*, 333 F.3d at 1103 (noting that even though distinctive physical characteristics of the Fremont Street Experience "indicate to the public that [it] is not simply another street, its openness to the public and smooth integration into downtown preserve its public forum status"). Although the physical characteristics of the plaza indicate it is not simply a sidewalk, its integration into the surroundings weigh in favor of public forum status.

                    *iii.     Traditional and Historical Use*

As to the traditional and historical use of the plaza and similar properties, the District presented evidence that, aside from petitioning in the designated area, sanctioned uses of the plaza are rare. When groups rent out meeting rooms in the library, they are allowed to put informational signs in the plaza. ECF No. 30 at 281–82. In addition, the Clark County Election Department displays signs during elections and the "Colonial Dames" hold yearly flag presentation ceremonies there. ECF No. 51-7 at 17. The District's Library Operations Director Jennifer Schember testified at the preliminary injunction hearing that only two public events were held in the plaza in recent years, both conducted by the library. ECF No. 30 at 284–85.

1    However, it appears that while use of the plaza for expressive activity is rare, it is not

2    generally proscribed.  Both Kushner and Jakus testified that the library has a restrictive policy

3    only for petitioning and voter registration, but not for other protected expressive activities such as

4    surveys, speeches, or leafletting. *Id.* at 183 (upon being asked whether the library placed any

5    restrictions or limits on access to the plaza, Kushner responded that "for petitions we ask them to

6    stand in a specific location.  Otherwise, no.  And people registering people to vote as well"); *see*

7    *also id.* at 239–40, 240–43.[4]  Schember testified that speeches would be allowed as long as they

8    did not cause a disturbance. *Id.* at 288–89.

9    Schember also testified that the designated areas for petitioning and voter registration

10   were established in 2004 and formalized according to the Petitioner Guidelines in 2014. *Id.* at

11   279; *see also* ECF No. 11-4 (guidelines).  Thus, it appears from the testimony that before 2004

12   there were no formal restrictions on expressive activity in the plaza.  "In order to change a

13   property's public forum status, the state 'must alter the objective physical character or uses of the

14   property.'" *Am. Civil Liberties Union of Nev.*, 333 F.3d at 1105 (quoting *Int'l Soc. for Krishna*

15   *Consciousness v. Lee*, 505 U.S. 672, 700 (1992) (Kennedy, J., concurring)).  There is no evidence

16   in the record that the District has changed the physical character or principle uses of the plaza in

17   addition to implementing the Petitioner Guidelines. *See Int'l Soc. for Krishna Consciousness*, 505

18   U.S. at 700 ("[W]hen property is a protected public forum the State may not by fiat assert broad

19   control over speech or expressive activities . . . .") (Kennedy, J., concurring).

20   Deans testified that on the day he was at the library, two individuals were conducting a

21   survey in the plaza. ECF No. 30 at 43.  He also testified that in his experience as a petition

22   circulator, areas outside libraries such as the plaza typically permit public speech such as

23   signature gathering. *Id.* at 11–12.  Given this evidence, this factor weighs in favor of a finding that

24   the plaza is a traditional public forum.

25   / / / /

---

26   [4] The District also does not allow solicitation. ECF No. 30 at 286–87.  Schember testified
27   that this included leafletting, which must be approved by the District's public relations manager.
     *Id.*  However, Kushner testified that there is no policy as to leafletting at the West Charleston
28   Library. *Id.* at 181.

1  *iv.*      *Balancing the Factors*

2          The District has not produced any evidence to show that expressive activity such as

3  petitioning is incompatible with the uses of the plaza.  While the plaza is primarily used for

4  patrons to enter and exit the library, the size and nature of the plaza do not make this use

5  incompatible with signature gathering.  Furthermore, speakers such as Deans have a reasonable

6  expectation that such a large, open area on the public sidewalk in front of a public library would

7  allow expressive speech.[5]  Given this compatibility, the speakers' expectations, and the plaza's

8  apparent openness to most expressive activity except petitioning and voter registration, the

9  relevant factors show that the plaza is a traditional public forum.

10          The only other court to apply the Ninth Circuit's traditional public forum test to a library

11  plaza concluded it was a traditional public forum. *See Prigmore v. City of Redding*, 211 Cal. App.

12  4th 1322 (2012).[6]  The court noted that there was "complete, unrestricted public access" to the

13  plaza and it was "larger than the typical sidewalk and includes several benches and a newspaper

14  rack." *Id.* at 1339.  The court also found that "[c]haracterizing the area as a public forum is

15  consistent with the role of the library as a mighty resource in the free marketplace of ideas." *Id.*

16          The District argues it did not intend to grant general public access to the plaza.  However,

17  "the intent of a government to create a nonpublic forum has no direct bearing upon traditional

18  public forum status." *Am. Civil Liberties Union of Nev.*, 333 F.3d at 1104; *see also Ark. Educ.*

19  *Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998) (holding "traditional public fora are open

20  for expressive activity regardless of the government's intent").  Furthermore, in support of its

21  position that the plaza is a limited public forum, the District relies on cases holding the interior of

22  a public library was not a traditional public forum. *See, e.g.*, *Kreimer v. Bureau of Police for*

23          [5] This is particularly the case at the West Charleston Library, located on the CSN campus,
24  which is designated as a "free speech zone." ECF No. 9 at 24.

25          [6] The District argues that *Prigmore* is not persuasive because the restrictions were alleged
26  to have violated the California Constitution's more protective liberty of speech clause.  However,
   the court noted that "California courts employ the same time, place, and manner test as the federal
27  courts." *Prigmore*, 211 Cal. App. 4th at 1336.  The expansiveness of California's liberty of
   speech clause did not affect the court's analysis of the library entrance plaza under the test
28  established in *American Civil Liberties Union of Nevada*.

1  *Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992).  These cases are unpersuasive in the

2  determination of whether the entrance plaza to a public library is a traditional public forum.

3       The east entrance plaza of the West Charleston Library is a traditional public forum.

4  2.  <u>Compliance with Rule 5.1</u>

5       The District argues Deans' motion should be denied because his claims rest on a finding

6  that Nevada Revised Statutes § 293.127565 is unconstitutional, and he did not provide notice to

7  the Nevada Attorney General as required by Federal Rule of Civil Procedure 5.1.  The District

8  contends the statute mandates the Petitioner Guidelines' zone designation and check-in

9  requirement.  Deans responds that the statute does not restrict protected expressive activity in

10  traditional public forums and so is not implicated by his claims.

11       Under Rule 5.1, a party challenging the constitutionality of a state statute must "file a

12  notice of constitutional question" and notify the state attorney general if "the parties do not

13  include the state, one of its agencies, or one of its officers or employees in an official capacity."

14  Fed. R. Civ. P. 5.1(a).  Upon such notice, the court is to certify to the state attorney general that a

15  statute has been questioned and the attorney general has 60 days to intervene. *Id.* at (b), (c).

16       Nevada Revised Statutes § 293.127565 states as follows:

> 1.  At each building that is open to the general public and occupied by the government of this State or a political subdivision of this State or an agency thereof . . . an area must be designated for the use of any person to gather signatures on a petition at any time that the building is open to the public.  The area must be reasonable and may be inside or outside of the building.  Each . . . employee in control of the operation of [such] a building . . . shall:
>> a)  Designate the area at the building for the gathering of signatures . . .
> 2.  Before a person may use an area designated pursuant to subsection 1, the person must notify the public officer or employee in control of the operation of the building governed by subsection 1 of the dates and times that the person intends to use the area to gather signatures on a petition.  The public officer or employee may not deny the person the use of the area.

25       This statute has been interpreted by the Supreme Court of Nevada only once, in *University*

26  *and Community College System of Nevada v. Nevadans for Sound Government*.  The court held

27  that with the enactment of the statute, Nevada "purposefully created a limited public forum at

1    certain public buildings." 100 P.3d at 189.  The court further held that "to the extent the statute

2    permits petition circulators to access government-occupied premises that have not traditionally

3    been accessible for expressive activities," the statute "grants petition circulators broader 'free

4    speech' rights than those protected by the First Amendment." *Id.* at 192–93.

5         Rather than placing additional restrictions on government properties that were already

6    traditional public forums, the statute requires that previously nonpublic forums become limited

7    public forums for the limited purpose of allowing petitioning in designated locations.  It creates a

8    floor for allowing this activity at government buildings, rather than a ceiling for restricting

9    petitioning on any government property.  To the extent the library itself is not a traditional or

10   designated public forum (which is not at issue in this case), the statute requires it to designate a

11   petitioning zone, creating a limited public forum.  However, that does not mean such a zone in a

12   traditional public forum like the West Charleston Library's east entrance plaza is necessarily a

13   valid restriction on protected expressive activity.  Nor does it mean that a challenge to such a

14   zone is a challenge to the statute itself.

15        Deans is not challenging the constitutionality of the statute, but rather the District's

16   implementation with respect to the traditional public forum of the West Charleston Library's

17   entry plaza.  Therefore, I find that the constitutionality of Nevada Revised Statutes § 293.127565

18   is not at issue in Deans' motion, and he is not subject to the requirements of Rule 5.1.

19                        3.   Permissibility of Time, Place, and Manner Restrictions

20        In a traditional public forum, the government "may impose reasonable restrictions on the

21   time, place, or manner of protected speech, provided the restrictions are justified without

22   reference to the content of the regulated speech, that they are narrowly tailored to serve a

23   significant government interest, and that they leave open ample alternative channels for

24   communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)

25   (quotation omitted).  The government has the burden of showing that there is evidence supporting

26   its proffered interests justifying the restrictions. *See Menotti v. City of Seattle*, 409 F.3d 1113,

27   1131 (9th Cir. 2005); *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 859 (9th Cir. 2004).  The narrow

28

1   tailoring requirement does not oblige the government to use the least restrictive means to regulate

2   expressive activities. *Ward*, 491 U.S. at 798.  Instead, this requirement "is satisfied so long as the

3   . . . regulation promotes a substantial government interest that would be achieved less effectively

4   absent the regulation." *Id.* at 799 (quotation omitted).  The restriction, however, may not "burden

5   substantially more speech than is necessary to further the government's legitimate interests." *Id.*

*i.   Petitioner Guidelines*

7   Deans argues that the District's Petitioner Guidelines, as implemented at the library's east

8   entrance plaza, are impermissible restrictions on protected expressive activity.  In particular, he

9   challenges the requirement that petitioners check in with the library's person in charge (PIC) and

10   restrict their activities to a designated zone.  The District, because it argues only that the plaza

11   was a limited public forum, responds that the Guidelines are viewpoint neutral and reasonable.

**a.  Check-in Requirement**

13   The District's check-in process requires that an individual notify the library PIC that "he

14   or she is present for the purposes of gathering signatures on a petition" and the "dates and times

15   that he or she intends to use the area designated for circulating petitions." ECF No. 51-7 at 4–5.

16   Deans first challenges the check-in procedure on the basis that it is a prior restraint.  A

17   prior restraint generally describes "administrative and judicial orders forbidding certain

18   communications when issued in advance of the time that such communications are to occur."

19   *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quotation and emphasis omitted).

20   Permitting or licensing schemes are sometimes considered prior restraints against which there is a

21   "heavy presumption" of invalidity. *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130

22   (1992).  However, schemes authorizing the government "to pass judgment on the content of

23   speech" are distinguishable from "those whose purpose is not to exclude communication of a

24   particular content, but to coordinate multiple uses of limited space on a content-neutral basis."

25   *Seattle Affiliate of the Oct. 22nd Coal. to Stop Police Brutality, Repression, and the*

26   *Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 797 (9th Cir. 2008) (quotations

27   omitted).

28

The District's check-in process requires only the notification from a petitioner that he is going to petition.  The policy does not allow a library's PIC to deny the petitioner access to the designated zone.[7]  Deans "does not seriously dispute that the [check-in requirement] is a content-neutral time, place and manner regulation." *Id.* at 798.  Therefore, I will evaluate whether the requirement satisfies the time, place, and manner standard rather than undertaking a prior restraint analysis.

Deans argues that the check-in requirement is invalid because it is not narrowly tailored. He contends that even if the District has significant interests in the safety and tranquility of library patrons, the check-in requirement does not address any purported problems with petitioners that could not be as effectively addressed in other ways.  The District responds that the requirement is reasonable in light of its interests in facilitating the orderly and safe operation of the library by being aware of the activities occurring on its premises, allowing staff to respond if other patrons question a petitioner's actions, and providing staff an opportunity to explain the Petitioner Guidelines to petitioners.

"A State's interest in protecting the safety and convenience of persons using a public forum is assuredly a valid government objective." *Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009) (quotations omitted).  Moreover, "under appropriate circumstances, a permitting requirement governing the use of a public open space can further a legitimate interest in the regulation of competing uses of that space." *Id.*  Therefore, the District's asserted interests supporting the check-in requirement are substantial.

However, the check-in requirement as implemented by the West Charleston Library does "not promote those interests in any significant way." *Id.*  Jakus testified that checking in "does not necessarily avoid problems" and agreed that "if a problem arises" it could be addressed "on the back end without prior notice." ECF No. 30 at 244; *see also id.* at 243–44 (Jakus agreeing that if she "looked outside through the windows or the glass doors and saw a problem, [she] could go out and address it").  The library could address any questions or disruptions after the fact, rather

---

[7] Indeed, Nevada Revised Statute § 293.127565(2) explicitly states that the library "may not deny the person the use of the area."

than requiring a petitioner to check in. *See Berger*, 569 F.3d at 1043 ("Rather than requiring all speakers to pre-register with the government as a prerequisite to engaging in communicative activity, the City could simply enforce its existing rules against those who actually exhibit unwanted behavior.").  The bare-bones nature of the check-in procedure also underscores how it is untethered to any coordination interest, as there is no limit on the number of petitioners, and no similar requirement for individuals engaging in any other expressive activity. *See id.* at 1041–43 (noting there was an imperfect fit between Seattle's stated interests in safety and coordination at the Seattle Center and its public performance permitting scheme that had "no limit on the number of permits that may be issued," that did not "assign particular performers to specific times or locations," and that was significantly underinclusive).

The District has not shown that any of its stated interests could not be as effectively achieved absent the check-in requirement.  The West Charleston Library's check-in requirement is not narrowly tailored to protect speech and is therefore unconstitutional.[8]

### b. Designated Petitioner Zone

Deans also challenges the West Charleston Library's designated zone for petitioners.  He argues the zone does not serve the stated interest in ensuring patron safety, nor is there any evidence supporting the zone designation.  In addition, he contends the zone does not leave open ample alternative channels for communication, as it is outside the path of pedestrian traffic and would require him to shout to get the attention of passersby.  The District responds that the designated zone is a reasonable restriction in light of petitioning that could impede the normal flow of traffic and disrupt library users and staff.  It further argues the designated zone is reasonable given the possibility of multiple petitioners in the plaza at the same time.  Finally, the District argues the zone is centrally located near all the access points to the library's east entrance

---

[8] This finding does not render the check-in requirement in Nevada Revised Statutes § 293.127565 unconstitutional, as evidence at other libraries might show that a check-in requirement is a valid restriction.

1   and "the physical structure requires that all visitors enter and exit the East entrance on the far east

2   side of the area" where the designated zone is located. ECF No. 56 at 20.[9]

3                                          1)   Defining the Zone

4            The designated zone in the plaza is described on the Nevada Secretary of State's website

5   as "[a]t the east entrance a[t] the far edge[] of the center circle." ECF No. 56-7 at 2.  The concrete

6   ground of the plaza is marked by four concentric circles. ECF No. 11-6.  The first spiral of

7   columns is between the second and third circles, the second is between the third and fourth

8   circles, and the outer spiral is outside the fourth circle. *See* ECF Nos. 11-6; 56-15.  Library staff

9   interpreted this designation to mean a spot directly across from the library doors, between two

10  columns in the outer spiral, in front of a handicap ramp into the plaza. *See* ECF Nos. 56-13 at 2

11  (marking the spot as "B"); 30 at 170–71.[10]  Because that spot is the one actually enforced by the

12  library, that is the zone I will analyze.

13                                          2)   Narrow Tailoring

14           There is no dispute regarding the significance of the interests the District is attempting to

15  achieve, namely the orderly functioning of the library, patron safety, and public access. *See* ECF

16  Nos. 56 at 19; 59 at 12.  However, the designated zone burdens substantially more speech than

17  necessary.

18           The District offers no evidence of any safety issues or disruptions to public access or the

19  functioning of the library by petitioning or voter registration activities, especially issues that

20  would necessitate the very constricted area enforced. *See McCullen v. Coakley*, 134 S. Ct. 2518,

21  2539 (2014) (noting Massachusetts pointed to no evidence of abortion protesters regularly

22  gathering at more than one particular clinic "in sufficiently large groups to obstruct access,"

23           [9] As in its entire opposition, the District argues primarily that its restrictions meet the

24  standards for limited public forums.  Its argument that the designated petitioner zone meets the
    traditional public forum standard is a bare recitation of the elements of the test.

25

26           [10] At the preliminary injunction hearing, the District offered a different diagram of the
    zone, which greatly expanded the area in which petitioners and voter registrars were supposedly

27  allowed. *Compare* ECF No. 56-8 *with* ECF No. 56-13.  However, that designation was made one
    week before the hearing, after Deans' lawsuit was filed. ECF No. 30 at 269.

28

making a buffer zone restriction at every clinic in the state not narrowly tailored); *Kuba*, 387 F.3d at 862 (finding no evidence that areas other than the challenged free expression zones at the Cow Palace posed a risk of congestion or safety hazard). While Kushner testified that Deans was "impeding access" to the library when not in the designated zone, no one complained about being able to get in or out of the library or appeared to be in distress. ECF No. 30 at 179–80; *see also id.* at 231 (Jakus testifying that people had to walk around Deans, but "[n]obody complained about it").[11] Thus, there is no record of any harm to the District's stated interests necessitating the enforced zone.

The District argues that by limiting petitioning to the designated zone, it has "taken reasonable steps to ensure that it will not be required to prefer one petitioner over another for a preferential location." ECF No. 56 at 20. Once again, however, the District produces no evidence that such a situation has ever arisen, either at the plaza or at similar entrance areas in front of other libraries, or that the designated zone would alleviate any coordination issues given its minimal dimensions. Nor is there evidence that the library "has tried less restrictive alternatives to the [designated] zone[], to no avail." *McCullen*, 134 S. Ct. at 2539.

The designated petitioner zone at the West Charleston Library's east entrance plaza burdens substantially more speech than necessary to further the District's stated interests and is therefore unconstitutional.

*ii.   Rules of Conduct*

In addition to the restrictions of the Petitioner Guidelines, Deans challenges (1) the Rule of Conduct under which he was banned from all libraries in the district and (2) the trespass policy that resulted in a year-long ban. It is not clear from Deans' briefing whether his First Amendment challenges to the Rules of Conduct and trespass policy are facial or "as applied" challenges.

A plaintiff "can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the [law] would be valid" or by establishing the challenged law

---

[11] To the contrary, the designated zone appears to conflict with the District's interest in facilitating public access. The zone requires all petitioners to stage themselves in front of the handicap ramp, impeding access for patrons with disabilities. *See* ECF No. 56-13 at 2.

or regulation is "impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n.6 (2008) (quotations omitted).

Both the Rules of Conduct and trespass policy apply to all library patrons, not just those seeking to engage in protected expression. Deans has not shown that the rule requiring compliance with reasonable staff instructions would be unconstitutional in every situation. Nor has he shown that there are no situations in which a one-year ban from all libraries in the district would be appropriate. Therefore, to the extent Deans is facially attacking the Rules of Conduct and trespass policy based on the claim that they are invalid in all their applications, these claims must fail.

To the extent Deans is making facial attacks based on overbreadth, these must also fail. "The overbreadth doctrine is a strong medicine that is used sparingly and only as a last resort." *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988) (quotation omitted). To succeed, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). The plaintiff "bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (alteration in original) (quotation omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech . . . ." *Id.* at 124.

*Virginia v. Hicks* provides a useful analogy. In that case, a local housing authority enacted a policy permitting city police to forbid unauthorized persons from returning to the housing authority's property if they were not residents or did not have a legitimate business or social purpose for being on the property. *Id.* at 116. If a person returned to the property after being forbidden to do so, they were subject to prosecution for a misdemeanor trespass. *Id.* at 116–17. The plaintiff was barred from the property but returned and was arrested and convicted under this policy. *Id.* at 117. He challenged the policy, but the Supreme Court found that the plaintiff

failed to demonstrate that the policy was overbroad.  The Court noted that, "[m]ost importantly," the policy applied to all people who entered the housing authority property, not just those seeking to engage in expressive activities. *Id.* at 123.  The Court also noted that the plaintiff failed to show that the policy's basis or purpose had anything to do with the First Amendment. *Id.*

The Rules of Conduct and trespass policy in this case apply to people "not engaged in constitutionally protected conduct—a group that would seemingly far outnumber First Amendment speakers." *Id.*  Moreover, Deans has failed to show that the basis for or purpose of the Rules and trespass policy, which are aimed at preventing and punishing disruptive behavior, have anything to do with the First Amendment.  Deans has "failed to demonstrate a realistic danger that the [Rules of Conduct and trespass policy] will significantly compromise recognized First Amendment protections of individuals not before the [c]ourt." *Taxpayers for Vincent*, 466 U.S. at 802.  Therefore, it would be inappropriate to entertain an overbreadth challenge to either, so I will consider Deans' challenges to the Rules of Conduct and trespass policy as they were applied to him.

### a.  Failure to Comply

Deans challenges the Rules of Conduct's prohibition on failing to comply with reasonable staff instructions.  Deans argues this prohibition is not narrowly tailored to the District's interest in preventing dangerous or disruptive conduct because it could apply to any action contrary to staff instruction.

The District responds that the language Deans challenges is an example of prohibited behavior, not a Rule of Conduct.  Therefore, it argues, only the instruction Deans failed to follow—to restrict his petitioning to the designated zone—is subject to challenge under the First Amendment.  Alternatively, the District contends the Rules of Conduct are reasonable and serve important government interests.

Deans was banned for a year from all libraries in the district for his failure to follow staff instructions regarding the Petitioner Guidelines. *See* ECF No. 56-9 (notice of trespass listing as the offending conduct "Failure to comply with staff instruction").  The reason provided for

1   punishing Deans was his failure to follow staff instruction, which is conduct prohibited by the

2   Rules of Conduct.  The District has not sufficiently demonstrated why such a prohibition would

3   not be subject to challenge.

4        Deans' refusal to comply with instructions to restrict his petitioning activities and leave

5   the library was expressive conduct, intended to convey a message about his First Amendment

6   rights. *See, e.g.*, ECF No. 30 at 23–24.  However, the rule regarding failure to comply with

7   reasonable staff instruction is not necessarily directed at expressive conduct.  Therefore, the

8   question is whether Deans can be validly punished under the general, content-neutral rule that

9   library patrons must comply with reasonable staff instructions, when his failure to comply is

10  linked to expressive conduct. *See Corales v. Bennett*, 567 F.3d 554, 566 (9th Cir. 2009).  When

11  the purpose of a policy "regulating conduct is aimed at the conduct itself, rather than the message

12  conveyed by that conduct," I must determine whether the policy is "narrowly drawn to further a

13  substantial government interest." *United States v. Swisher*, 811 F.3d 299, 312 (9th Cir. 2016)

14  (quotations omitted).

15       The District's interest in preventing "behaviors and activities that interfere with the safe,

16  secure, and respectful use of libraries" is significant. ECF No. 56-4.  This interest is served by the

17  requirement that patrons follow reasonable staff instructions, as such a requirement prohibits

18  patrons from unreasonably interfering with other patrons' use of the library. *See Kreimer v.*

19  *Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1264 (3d Cir. 1992).  The prohibition

20  is limited to reasonable instructions, and aimed at preventing behaviors that are less common but

21  still prohibited. *See* ECF No. 30 at 272 (giving examples such as patrons spitting or defecating on

22  library floors).  In this case, the instructions given were intended to enforce not-yet-invalidated

23  policies and were aimed at Deans' increasingly disruptive behaviors that were not specifically

24  listed in the Rules of Conduct.  Other than the impossible task of listing all possible prohibited

25  disruptive conduct, it is not clear how such a rule could be more narrowly drawn.  Deans has not

26  shown as a matter of law that the requirement to follow reasonable staff instructions is

27  unconstitutional as applied to him.

28

1 **b.   Trespass Policy**

2   Finally, Deans challenges what he terms the District's "policy of automatically trespassing

3 individuals for an entire year for any Rules of Conduct violation." ECF No. 51 at 27 (emphasis

4 omitted).  He contends this is a prior restraint on individuals' right to engage in expressive

5 activity on library property and, in particular, their right to receive information and ideas.  He also

6 argues the policy is not narrowly tailored and is without justification.

7   The District denies that it automatically trespasses people for an entire year for any

8 violation, but rather does so only for serious infractions.  It also argues the trespass is a penalty

9 and Deans has failed to establish that the District cannot exclude an individual from a location

10 otherwise open to the public as a penalty for breaking rules governing conduct.

11   As an initial matter, Deans has not shown that the District has a policy to trespass people

12 for a year from all libraries for any violation of the Rules of Conduct.  The evidence shows that

13 violations can be addressed by verbal warnings and temporary exclusions from a library, as well

14 as a year-long ban. *See* ECF Nos. 30 at 159; 56-2 at 2–3.  The District's "PIC Manual" states that

15 depending "on the seriousness of the infraction, any patron who violates any of these Rules of

16 Conduct may be trespassed from the Library District for a period of up to one year." ECF No. 51-

17 6 at 4.  The publicly available Rules of Conduct state that "[f]ailure to comply . . . may result in

18 restriction of library privileges, immediate removal from the premises, or exclusion from the

19 library for a period of one day to one year, depending on the seriousness of the infraction." ECF

20 No. 56-4.

21   Schember testified that if an individual is banned from a library, the ban is automatically

22 for a year. ECF No. 30 at 290, 297–98.  The individual can appeal to the District's administration,

23 but the ban is not suspended during the appeal. *Id.* at 292, 294–95.  Given this evidence, it

24 appears the District's policy is that if an individual is trespassed, it is for one year and from all

25 libraries in the district.  I will construe Deans' challenge as one to this policy as applied to him.

26   "The term prior restraint is used to describe administrative and judicial orders forbidding

27 certain communications when issued in advance of the time that such communications are to

28

occur." *Alexander*, 509 U.S. at 550.  Temporary restraining orders and permanent injunctions

forbidding speech activities "are classic examples of prior restraints." *Id.*  There is a "time-

honored distinction" between prior restraints on future speech and penalties for past speech. *Id.* at

553.  Penalties held not to be prior restraints include forfeiture of expressive materials for

violating the Racketeer Influenced and Corrupt Organizations Act and fines imposed for selling

obscene materials. *See Alexander*, 509 U.S. at 558; *Polykoff v. Collins*, 816 F.2d 1326, 1337–38

(9th Cir. 1987).  In *Alexander v. United States*, the Supreme Court upheld a forfeiture order

because it did not "forbid petitioner from engaging in any expressive activities in the future, nor

[did] it require him to obtain prior approval for any expressive activities." *Alexander*, 509 U.S. at

551 (upholding the forfeiture of the petitioner's wholesale and retail businesses and $9 million,

"which effectively shut down his adult entertainment business," *id.* at 549).  The order imposed

no legal impediment to the petitioner's ability to engage in any protected expressive activity. *Id.*

at 551.  In *Polykoff v. Collins*, the appellants challenged felony fines imposed on them for selling

obscene material, arguing the fines could force them to close, thereby restraining the sale of

protected material. 816 F.2d at 1337.  The Ninth Circuit found the appellants had not shown that

the fines would be imposed in such a way as to force the closure of any businesses, and so the

fines could not be invalidated as a prior restraint on that basis. *Id.* at 1338.

The District's trespass policy is hard to fit neatly into the category of a prior restraint or a

penalty.  The ban from District properties is a penalty for illegal conduct—trespass under Nevada

Revised Statutes § 207.200.  At the same time, the ban imposes a legal impediment to Deans'

ability to engage in protected expressive activities, including receiving information and ideas. *See*

*Va. State Bd. of Pharmacy v. Va. Citizen's Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976)

(noting the Supreme Court has "referred to a First Amendment right to receive information and

ideas and that freedom of speech necessarily protects the right to receive" (quotations omitted));

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) (official actions identified as

prior restraints "gave public officials the power to deny use of a forum in advance of actual

expression").  Moreover, while there is an appeals process, Deans was banned from all district

1   libraries for a year with no procedural safeguards. *See Southeastern Promotions, Ltd.*, 420 U.S. at

2   559–60; *see also Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 WL 1290215, at *3–4 (W.D.

3   Tex. Mar. 27, 2013) (finding a likelihood of success on the merits that a criminal trespass from

4   city hall with no procedural safeguards was a prior restraint).

5       However, even disregarding the presumptive unconstitutionality of prior restraints, the

6   trespass policy is unconstitutional as applied to Deans.  A government regulation of expressive

7   conduct is "sufficiently justified if it is within the constitutional power of the Government; if it

8   furthers an important or substantial governmental interest; if the governmental interest is

9   unrelated to the suppression of free expression; and if the incidental restriction on alleged First

10  Amendment freedoms is no greater than is essential to the furtherance of that interest." *United

11  States v. O'Brien*, 391 U.S. 367, 377 (1968).

12      Deans does not argue the trespass policy is content-based or not within the government's

13  constitutional power.  Deans argues the policy has no "principled justification for existing." ECF

14  No. 51 at 22.  Reading the District's opposition charitably, the interest meant to be furthered by

15  the trespass policy is that of preventing "behaviors and activities that interfere with the safe,

16  secure, and respectful use of libraries." ECF No. 56 at 21.[12]  As discussed above, this is an

17  important government interest.

18      However, the trespass policy—and its incidental restriction on protected expressive

19  activities—is greater than is essential to the furtherance of the District's interests.  The District

20  produces no evidence showing why a year-long ban from all libraries was tailored to its interests.

21  The main justification offered for the length of the ban was that it was the national standard. ECF

22  No. 30 at 297–98.  The District offers no justification for why Deans' refusal to petition in the

23  designated zone and subsequent refusal to leave the library for the day warranted a year-long ban.

24  Nor did it offer a justification for why such violations of its Rules of Conduct warranted a ban

25  from every library in the district.

26

27      _____

28      [12] The District's argument in support of the trespass policy is one sentence long, stating
    only that Deans has not shown that trespass is not a valid penalty. ECF No. 56 at 21.

1    The length and extent of the ban are not narrowly tailored to the District's professed

2    interests.  Therefore, as applied to Deans, the trespass policy of a year-long ban from every

3    library in the district is unconstitutional.

4         **B.  Fourteenth Amendment – Void for Vagueness**[13]

5         "A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know

6    what conduct is prohibited or is so indefinite as to allow arbitrary and discriminatory

7    enforcement." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554 (9th Cir. 2004) (citations

8    omitted).  Even when addressing a facial challenge, I "consider whether a statute is vague as

9    applied to the particular facts at issue, for [a] plaintiff who engages in some conduct that is clearly

10   proscribed cannot complain of the vagueness of the law as applied to the conduct of others."

11   *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quotation omitted); *see also*

12   *United States v. Szabo*, 760 F.3d 997, 1003 (9th Cir. 2014).  If "the statutory terms are clear in

13   their application" to the plaintiff's conduct, his vagueness challenge "must fail." *Humanitarian*

14   *Law Project*, 561 U.S. at 21.

15        1.   Designated Petitioner Zone

16        Deans argues the West Charleston Library's implementation of the Petitioner Guidelines

17   is unconstitutionally vague because it does not clearly indicate where the designated petitioning

18   zone is.  He contends the description, "[a]t the east entrance a[t] the far edge[] of the center

19   circle," can be reasonably interpreted in several ways, and so is impermissibly vague.  The

20   District responds that the description was sufficiently definite for Deans to know he was outside

21   of the designated spot, so he cannot bring a facial challenge because his own conduct was clearly

22   proscribed by the petition policy.

23        The West Charleston Library restricts petitioners at the east entrance to the "far edge[] of

24   the center circle." ECF No. 56-7.  The District argues this designation is not vague and "'covers

25   the area from the far edge of the smaller circle [created by the innermost spiral of columns] to the

---

26        [13] Deans challenges the petitioner zone and Rules of Conduct under both the United States
27   and Nevada constitutions.  The Supreme Court of Nevada reads the state due process clause as
     coextensive with the federal clause, so I do not analyze Deans' state challenge separately. *See,*
28   *e.g.*, *Rico v. Rodriguez*, 120 P.3d 812, 817 (Nev. 2005).

parking lot." ECF No. 56 at 27.  However, this description was devised by the District in anticipation of the preliminary injunction hearing, and does not match the area to which Deans was directed, ostensibly according to the published zone designation.  Moreover, even District witnesses were confused about what the official designation meant. *See, e.g.*, ECF No. 30 at 245–47.

However, there is a genuine issue of material fact as to where Deans was standing and whether he was in any of the possible definitions of the petitioner zone.  At the preliminary injunction hearing, witnesses offered different descriptions of where Deans stood when he was petitioning.  Deans testified that he "positioned [himself] in the center circle, you know, approximately in the center circle." ECF No. 30 at 20–21.  It is not clear what "center circle" Deans is referring to.  He also testified that he was between 16 and 30 feet from the library entrance. *Id.* at 28–29; *see also* ECF No. 11-6 (architectural diagram of the east entrance showing this positioning would have been between the centermost circle and the library doors).  Meanwhile, Kushner testified that Deans was approximately 15 to 20 feet from the door. ECF No. 30 at 144.

A reasonable jury could find that, despite multiple possible interpretations of the designated zone, Deans was never standing in an area that could fall within any interpretation.  Therefore, there is an issue of fact as to Deans' standing to challenge the designated zone as impermissibly vague.

## 2. Rules of Conduct

Deans also challenges the "failure to follow reasonable staff instruction" Rule of Conduct as impermissibly vague.  He contends the rule does not provide any notice of what behavior is prohibited and lacks objective standards to curb possible arbitrary enforcement.  The District responds that the rule must be read in context.  It further argues reasonableness is an objective standard that excludes arbitrary actions.

The prohibition on failing to follow reasonable staff instructions must be read in the context of the entirety of the Rules of Conduct.  The District prohibits "behaviors and activities

that interfere with the safe, secure, and respectful use of libraries," including "[c]onduct that endangers or disturbs library users or staff in any way, or that hinders others from using the library or its resources." ECF No. 56-4.  One such prohibited behavior is the "[f]ailure to comply with reasonable staff instruction." *Id.*  Thus, any punishment based on the failure to comply rule will have to be a function of a reasonable staff instruction meant to prohibit dangerous or disturbing uses of the library.

Although the Rules of Conduct "are marked by flexibility and reasonable breadth, rather than meticulous specificity, . . . it is clear what the [rules] as a whole prohibit[]." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (quotation and citation omitted).  Moreover, the mere fact that a reasonableness determination must be made does not render the rules vague. *See Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 315 (1994) (noting that reasonableness "is a guide admitting effective judicial review in myriad settings, from encounters between the police and the citizenry . . . to the . . . federal income tax context" (citations omitted)).  This is not a situation in which "no standard of conduct is specified at all" but rather one where there is "an imprecise but comprehensible normative standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).  Deans has not shown that the prohibition on failing to follow reasonable staff instruction is impermissibly vague as a matter of law.

### III.       CONCLUSION

IT IS THEREFORE ORDERED that plaintiff William Deans' motion for summary judgment **(ECF No. 51) is GRANTED in part.**  The Las Vegas Clark County Library District's Petitioner Guidelines' check-in procedure and designated petitioner zone as enforced at the West Charleston Public Library's east entrance plaza are unconstitutional under the First Amendment. Likewise, the District's trespass policy as applied to Deans violates the First Amendment.

DATED this 24th day of May, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE